**Wayne B. HARRIS, Petitioner,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 98–3501.

United States Court of Appeals,
Federal Circuit.

May 7, 1998.

Wayne B. Harris, pro se, petitioner, Phoenix, AZ.

Elizabeth M. Hosford, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director.

Before CLEVENGER, BRYSON, and GAJARSA, Circuit Judges.

CLEVENGER, Circuit Judge.

Wayne B. Harris appeals the final decision of the Merit Systems Protection Board (Board), Docket No. DE0752970009–C–1, which denied review of an initial decision denying his petition for enforcement of a settlement agreement between him and his former employing agency, the Department of Veterans Affairs (DVA). The settlement agreement resolves Mr. Harris's appeal of his removal by the DVA. In the initial decision, the administrative judge correctly held that, by withdrawing his application for a

disability retirement from the Office of Personnel Management (OPM), Mr. Harris failed to comply with the settlement agreement. Consequently, Mr. Harris waived his right to appeal his removal to the Board. The question remains, however, whether under the settlement agreement and the applicable regulation, 5 C.F.R. § 844.202, the DVA fulfilled its obligation to assist Mr. Harris in securing a disability retirement. We therefore vacate the Board's decision and remand the case for further proceedings.

## I

Mr. Harris was employed as a Housekeeping Aid by the DVA. On February 12, 1996, a supervisor of Mr. Harris, Michael E. Peck, requested that Mr. Harris undergo a fitness for duty examination. In that request, Mr. Peck indicated that Mr. Harris had "demonstrated abnormal behavior" and that he believed that Mr. Harris "may have psychiatric problems." Mr. Peck concluded, "[w]hile it may have been a laudable goal for our medical staff to try and assist this individual with his health problems and then return him to duty," he thought Mr. Harris too dangerous for continued employment.

The record contains two contact reports submitted by fellow employees of Mr. Harris that concur with this assessment. In one, Roberto A. Peart remarked that Mr. Harris "appear[ed] to be struggling with strong paranoid ideation and delusional thoughts." In another report, a physician at the DVA, Robert L. Baird, reported that Mr. Harris had been brought to him in "crises" and that Mr. Harris had received medication from a "Dr. Gilman."

On July 19, 1996, the DVA informed Mr. Harris that it had proposed his removal. The diagnosis from Mr. Harris's fitness for duty examination was "[d]elusional disorder, persecutory type." To qualify for his position, an employee "[m]ust possess emotional and mental stability." The communication also indicated that Mr. Harris had been suspended in 1995 for a confrontation with a coworker involving abusive language and threats of physical violence. Because Mr. Harris did not meet the qualifications of his position and because of his disciplinary rec-

ord, the DVA concluded that removal was appropriate.

On August 15, 1996, the DVA indicated that it would remove Mr. Harris, and on August 30, 1996, the DVA removed him. The DVA informed Mr. Harris that he could apply for a disability retirement under the Federal Employee Retirement System (FERS), because his removal was based on his inability to satisfy the requirements of his position and he had completed at least 18 months of Federal civilian service.

## II

Mr. Harris, acting pro se, appealed his removal on September 21, 1996. Before the administrative judge ruled on his case, Mr. Harris submitted, with the DVA's assistance, an application for a disability retirement under FERS. The application had two parts, an "Applicant's Statement of Disability" and a "Supervisor's Statement." In the former, Mr. Harris answered "unknown" to all three queries on the form concerning his medical disability and how it affected his job performance. Indeed, Mr. Harris did not indicate on what basis he was applying for a disability retirement. The only significant information provided on the form was that Mr. Harris intended to call on three physicians from the DVA to support his application for a disability retirement.

In the Supervisor's Statement, Mr. Harris's supervisor of almost six years, John A. Flowers, indicated that Mr. Harris's conduct was unsatisfactory and that it was impossible for the DVA to accommodate his disability. Mr. Flowers explained:

> Mr. Harris suffers from "delusional disorder, persecutory type" which affects his temper, attitude, memory and his performance on the job in general. He is unable to take constructive criticism from anyone.... He is paranoid, irritable and angry and he has frequently had verbal confrontations [with others] over minor problems. When he feels he is being spied on and that everyone is watching him, he ceases all his work activity.
>
> Frequently, Mr. Harris is delusional and insists that people are out to get him and

leaves his assigned work area to discuss his problems with [others], without the permission of his supervisor. Mr. Harris exhibits extreme paranoia and hostility and has even presented himself at his supervisor's home because he felt the need to pursue a confrontation. Mr. Harris had threatened to assault his co-workers because he feels that they are persecuting him.... Mr. Harris believes that the CIA, the hospital director and others are involved in a conspiracy against him.

. . . .

... Many times disciplinary actions [have] been reduced to verbal counseling following unacceptable conduct, in order to allow Mr. Harris to seek psychiatric care. Mr. Harris [sic] mental state was such that he had many imaginary conflicts with governmental officials, employees and supervisory personnel.

In a letter dated October 18, 1996, OPM responded to Mr. Harris's application for a disability retirement. Using a form entitled "Additional Information for Psychiatric Disorders," OPM requested that Mr. Harris provide extensive medical information documenting his disability. Mr. Harris alleges that he did not receive this letter from OPM until after November 13, 1996.

On October 21, 1996, before Mr. Harris had received OPM's request, the administrative judge convened a preliminary status conference by telephone. During that conference, the administrative judge entered a settlement agreement (the Agreement) into the record, and he accordingly dismissed the appeal in an initial decision. The administrative judge tape-recorded the terms of the Agreement and the parties' acceptances. The following terms of the Agreement, in which Mr. Harris is the "appellant" and the DVA is the "agency," are relevant here:

1) the appellant voluntarily withdraws his appeal; 2) the agency agrees to assist him with his disability application which is currently pending before [OPM]; 3) the appellant my [sic] refile this appeal within 30 days of his receipt of any final decision by OPM which denies his disability application, provided he also appeals OPM's final decision to the Board and asks that it be joined with his refiled appeal (alternatively, he may refile this appeal on March 21, 1997, if he has not received a final decision from OPM); ... 7) the parties request that the Board retain jurisdiction to enforce the terms of this agreement.

We presume that the mutual interest in a disability retirement for Mr. Harris, as evidenced by provision two of the Agreement, was to provide him with some financial support. Were OPM to approve a disability retirement for Mr. Harris, he would receive, during the first year of disability, up to 60 percent of his average pay, minus any adjusted social security disability benefits to which he would be entitled. After the first year, he would receive up to 40 percent of his average pay, minus 60 percent of adjusted social security disability benefits, if any. See 5 C.F.R. § 844.302; Federal Employees' Retirement System—Disability Retirement, 53 Fed.Reg. 33,433, 33,433 (1988) (interim rule with request for comments) [hereinafter Interim Rule].

On November 1, 1996, 11 days after the administrative judge dismissed his appeal, Mr. Harris petitioned the Board for review of the initial decision. Mr. Harris alleged, among other things, that he had been forced to enter into the Agreement. The Board denied his petition for review, and the initial decision became final on April 3, 1997. Mr. Harris did not appeal the Board's final decision to us.

Also on November 1, 1996, Mr. Harris wrote OPM and requested to withdraw his application for a disability retirement. In that request, Mr. Harris indicated that the administrative judge had encouraged him to pursue his application but that, "in good faith," he could not do so. In a letter to him dated November 7, 1996, OPM granted his request and "closed" his claim for disability retirement benefits without comment. OPM sent a copy of that letter to the DVA.

III

On April 15, 1997, approximately five months after the Agreement was struck, Mr. Harris filed a petition for enforcement, in which he sought to refile the appeal of his

removal pursuant to the Agreement. Mr. Harris alleged that, because he had not received a final decision from OPM concerning his application by March 21, 1997, the third provision of the Agreement allowed him to refile his appeal. Mr. Harris asserted that the Agreement did not address closed claims like his.

In an initial decision dated May 22, 1997, the administrative judge denied the petition. First, the administrative judge indicated that the Agreement bound the parties. According to the administrative judge, Mr. Harris had failed to comply with the terms of the Agreement, because he had withdrawn his application for a disability retirement before OPM could render a final decision. The "fundamental purpose of the settlement agreement was for the agency to assist the appellant in applying for disability retirement," the administrative judge wrote, and the purpose of the third provision was "to preserve [Mr. Harris's] right to appeal if, and only if, OPM denied or delayed processing his application." Because Mr. Harris had withdrawn his application instead of making a "good faith effort towards processing" it, the administrative judge concluded that Mr. Harris had not complied with his obligation under the Agreement to pursue the disability retirement application. The administrative judge accordingly denied his request to refile his appeal.

Mr. Harris petitioned to the full Board, which denied his petition for review on October 23, 1997. Mr. Harris appeals to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

### IV

█ We must "hold unlawful and set aside" any Board decision that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994). The petitioner bears the burden of establishing error in the Board's decision. *See, e.g., Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 140 (Fed.Cir.1986). We first review

whether the administrative judge correctly denied Mr. Harris's petition for enforcement. Mr. Harris contends that, under the Agreement, he should be allowed to refile his appeal of his removal. Alternatively, Mr. Harris argues that the Agreement is invalid. Because Mr. Harris has not carried his burden of proving that the Board erred, we accordingly hold that the Board's decision denying his petition for enforcement was lawful.

### A

█ Mr. Harris contends that, under provision three of the Agreement, the Board erred by denying his request to refile the appeal of his removal. A settlement agreement is a contract, and we apply basic contract principles unless precluded by law. *See, e.g., Tretchick v. Department of Transp.*, 109 F.3d 749, 752 (Fed.Cir.1997). The interpretation of a settlement agreement is an issue of law, which we review without deference to the Board's decision. *See, e.g., King v. Department of the Navy*, 130 F.3d 1031, 1033 (Fed.Cir.1997). In interpreting an agreement, we first ascertain whether the agreement clearly states the understanding between the parties. If there is an ambiguity in the formation of the agreement or during its performance, we implement the intent of the parties at the time the agreement was struck. We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning. *See id.*

Under the Agreement, the parties intended for Mr. Harris to exchange his appeal for, among other things, the DVA's assistance in pursuing his application for disability retirement benefits. In provision one, Mr. Harris agreed to withdraw his appeal. In provision two, the DVA agreed to assist Mr. Harris with his application. The parties intended for provision three to protect Mr. Harris in the event that his application came to naught. In the event that OPM denied his application, Mr. Harris could reinstate his appeal, as long as he appealed the adverse decision from OPM on his application as well as his removal. Alternatively, were OPM to fail to render a final decision by March 21, 1997,

Mr. Harris could refile his appeal of the removal action. It is only if OPM were to fail to issue a final decision by March 21, 1997, that, under the Agreement, Mr. Harris could pursue his appeal of the removal without appealing the denial of his application.

Mr. Harris contends that the Agreement does not obligate him to pursue his application. We disagree. By having OPM close his application instead of pursuing it until either OPM issued a final decision or until March 21, 1997, passed without OPM having rendered a final decision, Mr. Harris materially breached the Agreement. The ordinary meaning of the Agreement indicates that the parties intended Mr. Harris not to withdraw his application. By so doing, Mr. Harris negated the intent of the parties to exchange Mr. Harris's appeal for, among other things, the DVA's assistance with his application. Under Mr. Harris's proposed interpretation of the Agreement, which would allow him to withdraw his application, these three provisions serve only to delay Mr. Harris's appeal of his removal from the date that it was originally filed until after March 21, 1997, when Mr. Harris could refile his appeal. The Agreement precludes such an interpretation.

## B

■ The Board held that the Agreement was valid and binding on the parties. In attacking the validity of the Agreement, Mr. Harris bears a "heavy burden." *Asberry v. United States Postal Serv.*, 692 F.2d 1378, 1380 (Fed.Cir.1982). Invalidity of a settlement agreement is shown, in the usual course, "either by fraud practiced upon [the petitioner] or by a mutual mistake under which both parties acted." *Id.* (quoting *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948)). Because Mr. Harris has not made a sufficient showing that he was defrauded or that there was a mutual mistake, we hold that the Agreement is enforceable.

We first note that the Board only entertains allegations that a settlement agreement is invalid in a petition for review. *See Wells v. Department of the Army*, 74 M.S.P.R. 266, 268 (1997). Because this appeal arises from a petition for enforcement, under the Board's

precedent, Mr. Harris may not question the validity of the Agreement. Moreover, Mr. Harris petitioned for review of the initial decision in which the administrative judge entered the Agreement and dismissed his appeal. The Board denied his petition, and Mr. Harris did not appeal that final decision to us. Consequently, the DVA argues, res judicata bars Mr. Harris from arguing that the Agreement is invalid here.

■ Even if we were to allow Mr. Harris to attack the validity of the Agreement in this appeal, he would not prevail. First, Mr. Harris implicitly argues that there was a mutual mistake with respect to what the Agreement required of him. However, any misunderstanding, were it to exist at the time of contracting, was unilateral, not mutual. The Agreement obliged Mr. Harris not to withdraw his application. If he thought that, under the Agreement, he could withdraw his application, the misunderstanding was his alone, for the ordinary meaning of the Agreement indicates otherwise. Hence, there is no mutual mistake here that renders the Agreement invalid.

■ Second, Mr. Harris seeks to demonstrate on this appeal that fraud was committed in the formation of the Agreement. He alleges that he unwittingly entered into the Agreement, that the administrative judge ignored his desire to maintain his appeal of the removal, and that he did not have all the necessary information concerning the application when the Agreement was struck. These allegations, however, do not meet the heavy burden of showing fraud. Mr. Harris has not alleged that either the DVA or the administrative judge knowingly concealed a material fact or intentionally misled him. Mr. Harris has not provided any corroborating evidence for his claims, so at most they remain unsupported allegations. To this end, Mr. Harris has had two opportunities, both in his petition for review of the initial decision of October 21, 1996, and in this petition for enforcement, to present supporting evidence. Because his fraud argument is legally and evidentially insufficient, we decline to remand this case to the Board for further proceedings on this issue.

## V

By withdrawing his application, Mr. Harris materially breached the Agreement. Consequently, Mr. Harris cannot refile his appeal under the Agreement. Just as Mr. Harris was obliged by the Agreement to pursue the disability retirement application in good faith, the DVA was obliged under the Agreement to assist Mr. Harris fully in that pursuit. *See, e.g., Link v. Department of the Treasury,* 51 F.3d 1577, 1582 (Fed.Cir.1995) (holding that "it is an implied term of every contract that each party will act in good faith towards the other"). In the circumstances of this case, the DVA may be duty bound to complete and prosecute in good faith a disability retirement application for Mr. Harris.

The DVA's obligation to Mr. Harris arises under 5 U.S.C. § 8451(a)(1)(A) (1994), which authorizes the agency to file a disability retirement application for an employee. To implement Congress's intent, OPM promulgated regulations under which an agency has a duty to file a disability retirement application for an employee when certain conditions are met, most notably when the agency concludes that an employee is incapable of making the decision to file. *See* 5 C.F.R. § 844.202 (1997). Because it appears that the DVA neglected this duty, both initially and thereafter in breach of its obligations under the Agreement, we vacate the Board's decision and remand for further proceedings.

Section 8451(a)(1)(A) of Title 5, which applies to employees who are enrolled in FERS, provides: "An employee who completes at least 18 months of civilian service . . . and has become disabled shall be retired on the employee's own application *or on application by the employee's agency.*" (Emphasis added.) In 1988, OPM promulgated 5 C.F.R. § 844.202(a), entitled "Agency-filed disability retirement applications":

(a) *Basis for filing an application for an employee.* An agency *must* file an application for disability retirement of an employee who has 18 months of Federal civilian service when all of the following conditions are met:

(1) The agency has issued a decision to remove the employee;

(2) The agency concludes, after its review of medical documentation, that the cause for unacceptable performance, attendance, or conduct is disease or injury;

(3) The employee is institutionalized, or the agency concludes, based on a review of medical and other information, that the employee is incapable of making a decision to file an application for disability retirement;

(4) The employee has no personal representative or guardian; and

(5) The employee has no immediate family member who is willing to file an application on his or her behalf.

(Emphasis added); *see also* Interim Rule, 53 Fed.Reg. at 33,434, 33,438.

Section 844.202(a) imposes a duty on an agency to file a disability retirement application when all of the necessary conditions are satisfied. The language of section 844.202 necessitates this construction. Because the regulation uses "must" instead of, for example, "may," it gives rise to a duty on the agency's part. In the commentary that accompanied the publication of the regulation as an interim rule, OPM confirmed that such a duty exists when it stated: "These regulations *require* an agency to apply on the employee's behalf" when the enumerated conditions are met. *Id.* at 33,434 (emphasis added).

Related law has been understood to require the agency to protect an employee's rights in this context when he or she is unable to do so. The Civil Service Retirement System (CSRS), which is the retirement system that preceded FERS for federal employees, has an almost identical regulatory scheme for agency-filed applications. Like FERS, CSRS authorizes agencies to file a disability retirement application on behalf of an employee. *See* 5 U.S.C. § 8337(a) (1994) ("An employee who completes 5 years of civilian service and has become disabled shall be retired on the employee's own application *or on application by the employee's agency.*" (emphasis added)). The CSRS regulation for agency-filed applications presently appears at 5 C.F.R. § 831.1205(a). Its predecessor, 5 C.F.R. § 831.1203(a), which became effective

in 1984, was essentially the same.[1] The only difference between section 844.202(a) under FERS and present-day section 831.1205(a) under CSRS is that the preambles to the two regulations state the different eligibility requirements for the two retirement systems. Otherwise, the five numbered conditions in the two regulations are identical. Because of the similarities between the two regulatory schemes in this instance, commentary on CSRS helps to construe FERS.

In promulgating the 1984 CSRS regulation, OPM stated: "It is envisioned that the employee involved in an agency-filed case will be suffering from a disease or injury that will have resulted in an appreciable eroding of mental and sometimes also physical capabilities." Medical Determinations Related to Employability; Reduction in Grade and Removal Based on Unacceptable Performance; Adverse Actions; and Retirement, 49 Fed. Reg. 1321, 1328 (1984) (final rule). In discussing agency-filed applications under CSRS, a federal district court stated:

> [T]he agency's obligation arises only for those employees whose mental condition gives the agency reason to believe the disability is rooted in mental disease or injury. In such a situation, the employee's sense of judgment could well be impaired. *To protect the rights of the impaired employee, the law requires the agency to file for retirement on the employee's behalf.*

*National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders v. United States Postal Serv.*, 657 F.Supp. 295, 300 (D.Colo.1987) (emphasis added).

■ The language of the regulation, the intent of OPM, and the comparable CSRS regulation, all mandate that section 844.202 be construed to impose a duty on the agency for the benefit of its employees when the conditions described in the regulation are met. That duty, in short, requires the agency to file and prosecute in good faith a disability retirement application.

## VI

From the record, it appears that the conditions that trigger the DVA's duty under section 844.202 may be satisfied in Mr. Harris's case. It seems certain that Mr. Harris has 18 months of creditable service under FERS, as the preamble requires; that the DVA removed him, as subsection (a)(1) requires; and that the DVA removed him because of his alleged disability, as subsection (a)(2) requires.

With respect to subsection (a)(3), there are numerous statements from the DVA suggesting that the DVA had reason to conclude that Mr. Harris was incapable of making a decision to file an application for a disability retirement. First, the very disability for which Mr. Harris was removed, a persecutory complex, conceivably prompted him to oppose his disability retirement application. The DVA knew of his predilection, as evidenced by the numerous statements by his supervisors and the fitness for duty examination. The evidence, much of which has been summarized above, strongly suggests that the DVA should have concluded that this condition was met. *Cf. Lizut v. Department of the Army*, 717 F.2d 1391, 1394–95 (Fed. Cir.1983) (holding that, under a 1980 CSRS regulation governing agency-filed disability retirement applications, "[t]he reason to believe standard serves as an appropriate test for determining when the agency's obligation to fulfill the administrative task of filing for disability retirement for an employee arises").

■ Although Mr. Harris actually filed a disability retirement application, that fact does not discharge an agency's duty under section 844.202 if the agency concludes that an employee is incapable of making a rational decision both to file and to process a retirement application with OPM. The retirement application itself, and Mr. Harris's subsequent reaction to it, raise serious questions whether Mr. Harris was capable of deciding whether, in the first instance, to apply for a disability retirement and, equally important, to pursue the application with OPM. In the

---

1. In 1993, OPM revised other CSRS regulations concerning disability retirements, and OPM reassigned what had been section 831.1203(a) to 831.1205(a) and made minor changes to the language. *Compare* 5 C.F.R. § 831.1203(a) (1993), *with* 5 C.F.R. § 831.1205(a) (1994).

portion of the application that he completed, Mr. Harris did not, as the form requested, explain that he was disabled or why his disability impaired his work. He believed that the application was based on lies, and that the DVA, not he, instituted the application. Nowhere in the record is there any inkling that Mr. Harris thought himself disabled, much less mentally disabled. All of this evidence strongly suggests that Mr. Harris was incapable of making a decision to file and pursue a disability retirement application.

With respect to subsections (a)(4) and (a)(5), the record before us does not indicate whether Mr. Harris had either a personal representative or guardian, or an immediate family member, who could stand in his stead. Certainly, there is no evidence suggesting that there was such a person.

Because section 844.202 imposes a duty on the DVA when certain conditions are met, and because there is substantial reason to suspect that those conditions have been satisfied in this case, we remand Mr. Harris's case to the Board for it to decide, upon further examination, whether the DVA should have filed a disability retirement application for Mr. Harris. Were the Board to rule that the DVA had neglected this duty, then in accordance with section 844.202 and the Agreement, the DVA should file a disability retirement application, and OPM should process the application expediently and in good faith.

## VII

Our precedent requires us to vacate the Board's decision. In *French v. Office of Personnel Management*, 810 F.2d 1118 (Fed.Cir. 1987), we held that the Board had abused its discretion when it refused to waive a statutory time limit for Mr. French to file a disability retirement application under CSRS. *See id.* at 1118. Section 8337(b) of Title 5 provided that an application was to be filed within one year from the date of separation unless the applicant was mentally incompetent. *See id.* at 1119. Mr. French was pro se, and there was significant evidence that he was mentally incompetent. *See id.* We noted that the "statute reflects a concern of Con-

gress that one disabled because of mental incompetence is not to lose the disability annuity because of failure to meet, in timely fashion, the preconditions as to procedure the sane and normal must satisfy." *Id.* at 1120. We vacated the Board's decision and remanded the case under specific instructions "to formulate procedures to ensure the presence of a competent conservator or attorney if possible in a case such as this." *Id.* In addition, we held that, if Mr. French were to refuse to cooperate in allowing himself to be represented by a competent person, no order with res judicata effect could be entered against him while his case sat in suspense during his time of non-cooperation. *See id.*

On remand, the Board responded to our command by establishing procedures "to be used in disability retirement cases of this kind." *See French v. Office of Personnel Management*, 37 M.S.P.R. 496, 497 (1988). In particular, the Board ordered the regional office to make diligent efforts for Mr. French to obtain pro bono representation and OPM to cooperate fully in a nonadversarial determination of Mr. French's competence. *See id.* at 499. If the regional office were unable to obtain counsel for Mr. French, the office was to withhold entering an order adverse to him and to dismiss the case without prejudice to await "reinstitution of the action under circumstances conducive to fair adjudication." *Id.*

In *French*, this court and the Board recognized that a person's mental incompetence may affect his ability to pursue and secure his rights under the law. When the Board is on notice of a person's likely incapacity in connection with a disability retirement application, it must enforce the rules it established in *French* for such cases.

By vacating the Board's decision, we require the Board to follow its own *French* procedures in determining whether the DVA breached its duty to assist Mr. Harris. In so doing, we implement section 844.202 in a manner which draws the Board, the DVA, and OPM together in a cooperative undertaking to assure that persons of likely mental incapacity will not suffer an impairment of

their rights on account of their incapacity. The decision in this case should come as no surprise to the Board, given its decision in *French*, or to OPM, which recognized the force of *French* when promulgating the FERS regulations for agency-filed disability retirement applications. Responding to a comment about the circumstances in which an individual's refusal to comply with a request to be examined may in itself be a symptom of a disease, OPM stated that "a recent court case, *French v. OPM*, has resulted in both OPM and the Merit Systems Protection Board taking a more active role in ensuring that such individuals have adequate legal representation before a final decision can be made in their cases." Federal Employees' Retirement System—Disability Retirement, 55 Fed.Reg. 6596, 6597 (1990) (final rule).

### VIII

For the reasons set forth above, we hold that the Board correctly ruled that Mr. Harris may not reopen his appeal to challenge his removal by the DVA. However, the Board's decision is vacated and the case is remanded to determine whether the DVA breached its obligations under the Agreement and section 844.202 by failing to initiate and process a disability retirement application for Mr. Harris.

*VACATED and REMANDED.*