Robin L. O'CONNOR Petitioner,

v.

DEPARTMENT OF NAVY Respondent.

No. 01–3167.

United States Court of Appeals,
Federal Circuit.

Nov. 8, 2001.

Before CLEVENGER, GAJARSA, and DYK, Circuit Judges.

PER CURIAM.

Robin L. O'Connor ("O'Connor") appeals the decision of the Merit Systems Protection Board ("MSPB"), affirming the decision of the Department of the Navy ("Agency") that her service as a Police Officer does not entitle her to "Law Enforcement Officer" ("LEO") retirement credit under the Federal Early Retirement System ("FERS"). *O'Connor v. Department of the Navy,* No. DC–0842–00–0179–I–1 (M.S.P.B. June 23, 2000). Because the Board's decision is not arbitrary, capricious, or an abuse of discretion, is supported by substantial evidence and is otherwise in accordance with the law, we *affirm.*

O'Connor is a Warrants Officer, classified as a GS–083–05 Police Officer, assigned to the Norfolk Naval Base in Norfolk, Virginia. The Warrants Officer works under the direct supervision of the Administrative Division Officer. O'Connor has served in this capacity since 1989.

The position description for the Warrants Officer states that the incumbent's primary duty is to serve various types of legal documents (warrants, capias, summons, subpoenas, etc.) received from law enforcement agencies on military and civilian personnel stationed on the Naval Base or assigned to ships and/or shore activities in the Naval Base area. The Warrants Officer is required to maintain a log of all documents received as well as to submit a monthly report of these documents to the Administrative Division Officer.

Both parties have stipulated that O'Connor was authorized to carry a firearm, had arrest authority, was required to maintain a level of physical fitness, but was not required to pass an annual physical fitness test as were those officers, who, unlike her, were hired after March 1991.

O'Connor testified that she arrested approximately 1500–2000 people each year between 1997–1999. Investigation and apprehension of criminals accounted for 90–95% of her work day. Additionally, O'Connor carries a weapon and handcuffs, carries a pager for quick notification, is on-call 24 hours a day, receives 40 hours of in-service training each year in a wide range of legal and police subjects, and drives a specially modified unmarked minivan for transporting prisoners.

O'Connor filed a request with the Agency for LEO retirement credit under FERS. The Agency rejected O'Connor's request. She subsequently filed a timely appeal to the Merit Systems Protection Board (MSPB). The MSPB affirmed the Agency's decision.

In its decision, the MSPB focused on the primary duties in O'Connor's position description. However, other relevant evidence was considered, such as testimony from O'Connor and her co-workers, as well as documentary evidence of warrants and arrests in which O'Connor had participated. See *Ferrier v. Office of Personnel Management,* 60 M.S.P.R. 342, 345 (1994). The MSPB afforded O'Connor the opportunity to prove entitlement to LEO retirement coverage by a preponderance of the evidence.

The MSPB affirmed the final decision of the Agency denying LEO retirement credit to O'Connor. The affirmance was based upon two factors: 1) the appellant's position description, testimony, and documentary evidence describing her duties as principally serving warrants issued by local and state law enforcement authorities; and, 2) no claim or showing was made that serving warrants issued by the Federal Magistrate was either the primary duty or accounted for any significant portion of O'Connor's work day. The MSPB concluded that O'Connor's position was administrative in nature and her primary duty was to serve various legal documents.

O'Connor filed a petition for review of the initial decision. The petition was denied and was made final. O'Connor then filed a timely appeal of the MSPB's denial of LEO retirement credit to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

■ This court must affirm an MSPB decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)-(3) (1994); *Hayes v. Dep't of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984). The burden of establishing reversible error in the Board's decision rests upon O'Connor. *Harris v. Dep't of Veterans Affairs,* 142 F.3d 1463, 1467 (Fed.Cir.1998).

In order to qualify for LEO retirement coverage under 5 USC § 8412(d)(2), an

appellant must satisfy the definition of Law Enforcement Officer as set forth at 5 U.S.C. § 8401(17). "Law Enforcement Officer" is statutorily defined as follows:

(A) an employee, the duties of whose position—

(i) are primarily—

(I) the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or

(II) the protection of officials of the United States against threats to personal safety; and

(ii) are sufficiently rigorous that employment opportunities should be limited (through establishment of a maximum entry age and physical qualifications) to young and physically vigorous individuals.

5 U.S.C. § 8410(17) (1994)

"Law Enforcement Officer" is further defined, by regulation, to exclude employees whose duties involve "maintaining order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than persons who are suspected or convicted of offenses against the criminal laws of the United States." 5 C.F.R. § 831.902 (2000). "Primary duties" are those that: a) are paramount in influence or weight, that is, constitute the basic reasons for the existence of the position; b) occupy a substantial portion of the individual's working time over a typical work cycle; and, c) are assigned on a regular and recurring basis. 5 C.F.R. § 842.802 (2001). In general, if an employee spends an average of at least fifty percent of his or her time performing a duty or group of duties, they are his or her primary duties. *Id.*

■ LEO retirement credit entitles the employee to retire upon attaining age 50 and completing 20 years of LEO service.

*Bingaman v. Dept. of the Treasury,* 127 F.3d 1431, 1433 (Fed.Cir.1997) (establishing the six factors required for LEO). The six factors which point toward LEO coverage are: 1) has frequent direct contact with criminal suspects; 2) is authorized to carry a firearm; 3) interrogates witnesses and suspects, giving Miranda warnings when appropriate; 4) works for long periods without a break; 5) is on call 24 hours a day; and, 6) is required to maintain a level of physical fitness.

■ O'Connor seeks LEO retirement credit under FERS. 5 USC § 8412(d)(2) (1994); 5 USC § 8401(17)(1994). She argues that her primary duty is the investigation, apprehension and detention of criminals and criminal suspects, allegedly in accordance with 5 USC § 8412(d)(2). O'Connor also contends that her duties satisfy the six *Bingaman* factors for determining whether a particular employee is entitled to LEO retirement credit. She submits that the satisfaction of several of the *Bingaman* factors automatically entitles her to LEO retirement credit.

We find O'Connor's argument to be unpersuasive, because she fails to address the basic reasoning of the lower court. The MSPB held that O'Connor's position facilitated the work of non-Federal legal and law-enforcement organizations. In other words, she was ineligible for LEO credit because she was not primarily enforcing the criminal laws of the United States pursuant to 5 U.S.C. § 8401(17)(A)(i)(I). O'Connor exclusively addressed her compliance with the "investigation, apprehension, or detention" portion of 5 U.S.C. § 8401(17)(A)(i)(I), but not the controlling section of that statute which requires that such investigation, apprehension and detention be under the laws of the United States.

Additionally, O'Connor's reliance on *Bingaman* is misplaced. First, O'Connor

considers the *Bingaman* factors controlling over the text of the statute. This is an incorrect legal assumption. The *Bingaman* factors are simply a set of tools to assist the MSPB; they implement but do not supersede the language of the statute itself. *Hall v. Department of the Treasury*, 264 F.3d 1050 (Fed.Cir.2001). Second, *Bingaman* can be distinguished from this case. In *Bingaman*, the court formulated the six factors only after deciding that the appellant's position, helping the Customs Service with drug interdiction, primarily involved the enforcement of federal laws. O'Connor has not made such a showing.

Because the Board's decision is not arbitrary, capricious, or an abuse of discretion, is supported by substantial evidence and is otherwise in accordance with the law, we affirm.

No costs.