Pauline E. MAXEY, Petitioner,

v.

**UNITED STATES POSTAL SERVICE,**
**Respondent.**

No. 02–3357.

United States Court of Appeals,
Federal Circuit.

Feb. 13, 2003.

Before NEWMAN, Circuit Judge, PLAGER, Senior Circuit Judge, and BRYSON, Circuit Judge.

PER CURIAM.

Pauline E. Maxey petitions for review of the decision of the Merit Systems Protection Board, *Maxey v. United States Postal Service*, Docket No. AT0752000737–C–1, 2002 WL 1377913 (June 17, 2002), denying Ms. Maxey's petition for enforcement of her settlement agreement with the Postal Service. The decision is *affirmed.*

## BACKGROUND

Ms. Maxey, a Postal Service Supervisor at the Athens General Mail Facility, was involved in an altercation with another supervisor. She was reduced in grade and reassigned, on the grounds of improper conduct and an inability to meet the essential requirements of the position. Ms. Maxey appealed to the Merit Systems Protection Board. After various delays, the parties entered into an oral settlement agreement at the hearing on July 31, 2001. The oral agreement was read into the record by the Postal Service representative and recorded on tape, and included a reduction in grade, back pay, and attorney fees. Both parties' representatives stated that these were the complete terms of the agreement as they understood it. Ms. Maxey stated, on inquiry by the administrative judge, that she entered into the agreement freely and voluntarily.

The settlement was accepted by the administrative judge as the "final and binding resolution of the appeal." When the parties stated that the agreement would be reduced to writing and that they wished to send the written copy to the board, the administrative judge also stated, "If there is any discrepancy between the written and the oral, the written will control because you will both have signed it. But if later it comes up, what was on the record will be controlling."

The agency presented a written agreement promptly after the hearing. Ms.

Maxey did not sign it, stating that there were "grave errors." She states that although she asked that the errors be corrected, they were not. Nonetheless, on September 21, 2001, the agency sent the agreed check for back pay to Ms. Maxey's representative; Ms. Maxey received the check on November 13, 2001. About three months later Ms. Maxey filed a petition for enforcement, stating that the agency was not in compliance with the settlement agreement; the petition alleged that, in addition to deliberate delayed payment of the settlement check, she was denied what she called an "EVA bonus," and not reimbursed for her travel expenses to the MSPB hearing, as she states was promised by the Postal Service.

The Board denied the petition, the administrative judge stating:

> For whatever reason, an agreement was never signed. Therefore, the oral agreement, which the appellant indicated constituted the complete terms that she understood and agreed to voluntarily, entered into the record at the hearing controls.... [T]he agency acted extremely promptly, and certainly within a reasonable period of time after the settlement was reached in this case, in procuring issuance of the appellant's back pay check. Although the appellant raises other matters ... none of them involve terms of the settlement of the agreement or allege any breach by the agency of that agreement. Accordingly, because the settlement agreement does not contain any provision relating to these matters, they are not cognizable in a petition for enforcement.

The Board denied review, and this appeal followed.

## DISCUSSION

Ms. Maxey states that 1) corrections were not made to the written agreement,

and therefore she did not sign it, 2) financial harm resulted from the agency's deliberate delay in delivery of the check for back pay, 3) she has not received the promised reimbursement for her travel expenses to the hearings, 4) she has not received her EVA Bonus for 2001 or the EVA Bonus Account Funds which were unaffected by the settlement, due to the lack of a written settlement statement, 5) the written settlement was to contain the agreement that Ms. Maxey would not have to work at the location where the incident took place, and 6) there was concealment of information, deception, and collusion on the part of the agency, which "disabled her settlement." Ms. Maxey requests restoration to the top level of her previous supervisory position and certain assurances, or an annuity on stated terms.

Under 5 C.F.R. § 1201.183(a)(4), in processing petitions for enforcement before the Board:

If the judge finds that there has been compliance or a good faith effort to take all actions required to be in compliance with the final decision, he or she will state those findings in a decision. That decision will be subject to the procedures for petitions for review by the Board under subpart C of this part, and subject to judicial review under § 1201.120 of this part.

Section 1201.120 states, in pertinent part:

Any employee or applicant for employment who is adversely affected by a final order or decision of the Board under the provisions of 5 U.S.C. 7703 may obtain judicial review in the United States Court of Appeals for the Federal Circuit....

■ Under 5 U.S.C. § 7703(c) this court will set aside the Board's decision if it was 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule, or regulation having been followed; or 3) unsupported by substantial evidence. *See Belanger v. Office of Personnel Management.*, 1 F.3d 1223, 1227 (Fed.Cir.1993) (this court determines whether the administrative decision is supported by substantial evidence on the record as a whole). We review as a matter of law the Board's construction of a settlement agreement. *Fomby–Denson v. Dept. of the Army*, 247 F.3d 1366, 1371 (Fed.Cir. 2001).

■ A settlement agreement is a contract, and is construed in accordance with general contract principles. *Harris v. Dept. of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed.Cir.1998). As discussed in *Harris*, a settlement agreement is interpreted in the following manner:

... we first ascertain whether the agreement clearly states the understanding between the parties. If there is an ambiguity in the formation of the agreement or during its performance, we implement the intent of the parties at the time the agreement was struck. We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning.

*Id.*

■ The recorded oral agreement shows that Ms. Maxey agreed to a voluntary downgrade in exchange for the Postal Service's agreement to expunge the discipline letter and to pay back pay and legal fees. Both parties' representatives stated that the provisions of the agreement as read orally into the record completed the terms of the agreement. Ms. Maxey was present, and stated that she understood the terms and that she entered the agreement voluntarily. Although Ms. Maxey states that the Postal Service delayed payment of back pay, part of the delay was

consumed in argument about the written agreement, and the administrative judge found that the time consumed was not excessive. There was no evidence of bad faith or extreme delay by the agency.

Ms. Maxey must show by a preponderance of the evidence that the agency breached the settlement agreement. She provided no evidence supporting her various charges, and has not explained away her attorney's statement to the administrative judge that the settlement as read into the record was complete.

The Board's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. There was substantial evidence that the Postal Service complied with the terms of the agreement of July 31, 2001, and it was not shown that additional terms were agreed upon, or that Ms. Maxey was denied any promised relief.

No costs.