NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PETER J. FITZSIMMONS,**
*Petitioner,*

v.

**DEPARTMENT OF TREASURY,**
*Respondent.*

---

2011-3206

---

Petition for review of the Merit Systems Protection Board in Case No. NY0432100212-I-1.

---

Decided: February 22, 2012

---

PETER J. FITZSIMMONS, of Jersey City, New Jersey, pro se.

JACOB A. SCHUNK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director.

---

Before RADER, *Chief Judge*, WALLACH, *Circuit Judge*, FOGEL, *District Judge*.[1]

RADER, *Chief Judge*.

Peter J. Fitzsimmons appeals from the Merit Systems Protection Board ("Board") decision affirming the Internal Revenue Service's ("IRS") removal of Mr. Fitzsimmons for performance-based reasons. Because the Board's decision is supported by substantial evidence and not contrary to law, this court affirms.

I

Mr. Fitzsimmons was a revenue officer at the IRS's Small Business/Self Employee Division and was responsible for the management of taxpayers' cases, along with other tasks. On January 29, 2008, Mr. Fitzsimmons' supervisor, Mark Newman, determined that his work performance was unacceptable in three Critical Job Elements ("CJEs").

After several reviews, on July 23, 2008, Mr. Fitzsimmons was placed on a 60-day performance improvement plan ("PIP"). On October 29, 2008, Mr. Newman determined Mr. Fitzsimmons's performance was still unacceptable. On the same day, Mr. Fitzsimmons informed another supervisor that he was diagnosed with clinical depression and would provide a psychiatrist's written documentation of his condition. Mr. Fitzsimmons also requested that his inventory be reduced for six months and that his review occur at the end of this period. On January 29, 2009, Mr. Fitzsimmons submitted a "Reasonable Accommodation Request" which repeated his request for reducing his inventory and suspending his

---

[1]    Honorable Jeremy Fogel, District Judge, United States District Court for the Northern District of California, sitting by designation.

formal review for six months. On March 4, 2009, his supervisors agreed that Mr. Fitzsimmons's inventory would be reduced and decided that a formal review would not be conducted until a Federal Occupational Health ("FOH") physician's assessment. On March 11, 2009, Mr. Newman provided Mr. Fitzsimmons a memorandum, informing him the PIP period was extended for at least an additional 60 days, reiterated his inventory reduction, and confirmed that an evaluation would occur after a physician's assessment.

On April 6, 2009, Mr. Newman issued a performance appraisal for April 1, 2008 to March 31, 2009. The appraisal rated Mr. Fitzsimmons's performance as unacceptable. However, because this appraisal was improperly premature, it was rescinded and replaced with documentation that Mr. Fitzsimmons was not rated during that time.

Following the FOH physician's assessment, on May 27, 2009, Mr. Fitzsimmons was informed that his inventory would remain at the reduced level through the end of August 2009 and that a formal review would not be conducted until after August 31, 2009. The letter stated the previous PIP plan was still in effect and an upcoming review would be the final review for the PIP process.

Before his final review, Mr. Fitzsimmons requested 200 hours of advanced sick leave to begin on August 31, 2009. The agency granted his request, and Mr. Fitzsimmons was away from work from August 31, 2009 through October 6, 2009.

Following Mr. Fitzsimmons's return to work, Mr. Newman performed a final review, which completed the PIP evaluation period. Mr. Newman determined that Mr. Fitzsimmons's performance continued to be unacceptable. On March 1, 2010, the agency proposed to remove Mr.

Fitzsimmons from his employment for unacceptable performance. On May 3, 2010, the agency issued a decision to remove him from his position effective May 7, 2010.

Mr. Fitzsimmons appealed to the Board. The administrative judge ("AJ") affirmed the agency's removal action. The AJ found that Mr. Fitzsimmons's performance was unacceptable even after he was afforded a reasonable opportunity to improve, that the proposed action was properly based on events that occurred within the year preceding the notice of proposed action, that the erroneously-issued appraisal did not nullify the PIP period, and that the agency had appropriately extended the PIP period in response to Mr. Fitzsimmons's requests. On June 16, 2011, the Board affirmed the AJ's decision and denied Mr. Fitzsimmons's petition for review. This court has jurisdiction under 28 U.S.C. § 4324.

## II

This court must affirm a decision of the Board unless this court finds it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Chadwell v. MSPB*, 629 F.3d 1306, 1308 (Fed. Cir. 2010). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jacobs v. Dep't of Justice*, 35 F.3d 1543, 1546 (Fed. Cir. 1994) (internal citation omitted). "The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998). "This court reviews questions of law . . . without deference

to the Board." *Carley v. Dep't of the Army*, 413 F.3d 1354, 1356 (Fed. Cir. 2005).

Mr. Fitzsimmons's argues the Board erred in affirming his removal for two reasons: 1) the agency should not have considered any performance issues after the April 6, 2009 review because the PIP period was erroneously extended; and 2) substantial evidence does not support the AJ's factual finding that the PIP period was extended in response to Mr. Fitzsimmons's requests.

"Appraisal period" is a period "for which a performance plan shall be prepared, during which performance shall be monitored, and for which a rating of record shall be prepared." 5 C.F.R. § 430.206(a)(1). "The appraisal period generally shall be 12 months so that employees are provided a rating of record on an annual basis." 5 C.F.R. § 430.206(a)(2). "Each rating of record shall cover a specified appraisal period" and "[a]gencies shall not carry over a rating of record prepared for a previous appraisal period as the rating of record for a subsequent appraisal period(s) without an actual evaluation of the employee's performance during the subsequent appraisal period." 5 C.F.R. § 430.208(h). When the agency determines that an employee's performance is unacceptable in one or more critical elements, "the agency shall afford the employee a reasonable opportunity to demonstrate acceptable performance[.]" 5 C.F.R. § 432.104. This period is also known as a PIP. IRS's manual provides, "[a] rating of record should not be assigned to the employee during the formal opportunity to improve period." IRM § 6.432.1.10(4).

A rating of record becomes "final" when it is issued to an employee, "[e]xcept as provided in § 430.208(i)[.]" 5 C.F.R. § 430.208(a)(3). This regulation provides three circumstances in which a rating of record may be

changed. 5 C.F.R. § 430.208(i). One such circumstance is "[w]here the agency determines that a rating of record was incorrectly recorded or calculated." 5 C.F.R. § 430.208(i)(3). When the Office of Personnel Management ("OPM") amended 5 C.F.R. § 430.208, it explained the term "incorrectly recorded" as follows:

> As an exception to the general prohibition regarding retroactively changing ratings of record, there is a relatively limited set of circumstances where an agency might feel compelled to change a rating of record long after it has been presumed to be final. An administrative error, such as a rating official who inadvertently "checks the wrong box" and assigns a summary rating level that does not correspond to the element levels that have been assigned, would certainly be good cause for an agency's decision to retroactively change the overall rating of record. . . . While OPM believes it was not the intent of the law governing performance appraisal to allow for independent action by management to retroactively alter a final rating of record, it does recognize some circumstances where such a change would be required. These proposed regulations are designed to be sufficiently flexible to allow for changes to ratings of record that occur in the normal course of communication between supervisors and employees close to the original issuance of a rating of record, as well as changes resulting from administrative procedures that provide employees with an avenue to challenge their ratings of record.

63 Fed. Reg. 19411, 19412 (Apr. 20, 1999).

In this case, during Mr. Fitzsimmons's PIP period, the April 6, 2009 appraisal was a rating of record that was

incorrectly issued. While an official inadvertently "check[ing] the wrong box" is an obvious example of an "incorrectly recorded" appraisal, it is not limiting. The regulation is designed "to be sufficiently flexible to allow for changes to ratings of record that occur in the normal course of communication between supervisors and employees close to the original issuance of a rating of record." 63 Fed. Reg. at 19412. Because this appraisal was withdrawn and Mr. Fitzsimmons's record was validly changed to "not ratable," the April 6, 2009 rating falls under the "incorrectly recorded" exception. This incorrect recording does not end an appraisal period, thus did not end Mr. Fitzsimmons's PIP period. *See* 5 C.F.R. § 430.208(a)(3). Accordingly, Mr. Fitzsimmons's primary argument, that is, the PIP period ended on March 31, 2009 due to the improper issuance of the annual appraisal, is unfounded. His remaining arguments based on this premise, likewise, have no legal or factual support.

As for the Board's finding that all of the extensions of the PIP were at Mr. Fitzsimmons's request, on October, 29, 2008 and January 29, 2009, Fitzsimmons requested that his inventory be reduced for six months and that his review occur at the end of this period. The agency granted his requests informally on March 11, 2009 and formally on May 27, 2009. Accordingly, the Board's finding that all of the extensions of the PIP were at Fitzsimmons's request is supported by substantial evidence.

For the foregoing reasons, the Board's decision is supported by substantial evidence and not contrary to law. Therefore, this court affirms the Board's decision sustaining Mr. Fitzsimmons's removal.

**AFFIRMED**