## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LUIS N. DIAZ,

        Appellant,

        v.

UNITED STATES POSTAL SERVICE,

        Agency.

DOCKET NUMBER
SF-0752-15-0497-I-1

DATE: January 29, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Luis N. Diaz</u>, Pacifica, California, pro se.

<u>Nina Paul</u>, San Francisco, California, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his removal appeal as settled. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review.  Except as MODIFIED in footnote 3 to include a finding that the settlement agreement complied with the requirements of the Older Workers Benefit Protection Act of 1990 (OWBPA), we AFFIRM the initial decision.

## BACKGROUND

¶2        The agency removed the appellant from his Customer Service Supervisor position effective April 3, 2015.  Initial Appeal File (IAF), Tab 7 at 22-23.  He filed a timely Board appeal of his removal, alleging that the agency had discriminated against him on the bases of his age (over 40) and national origin (Nicaraguan/non-Mexican American).  IAF, Tab 1 at 3.  While the appeal was pending, the parties reached a settlement agreement resolving the appeal.  IAF, Tab 25.  The agreement provided, among other things, that it constituted a "full and final release" of the parties' claims against one another, including the appellant's Board appeal and his equal employment opportunity (EEO) complaint, for all "incidents, occurrences, or actions taking place prior to the execution of [the] Agreement."  *Id.* at 7.  The agency agreed, among other things, to rescind and redact the removal documents from the appellant's Official Personnel File, to provide a neutral reference, and to pay him a fixed sum in back pay.  *Id.* at 8-11. The appellant agreed, among other things, to submit his application for immediate retirement no later than July 10, 2015, and that, if he failed to do so, the

agreement would operate as his immediate, irrevocable resignation.[2] *Id*. at 9. He also agreed not to seek or accept reemployment with the agency. *Id.* at 10. The agreement set forth the appellant's rights under the OWBPA, including that he could take up to 21 days to accept the agreement and that, after both parties signed the agreement, he had up to 7 days to revoke his acceptance of the agreement. *Id.* at 14-15. The appellant and his attorney signed the agreement on July 2, 2015, and the agency representative signed the agreement on July 3, 2015. *Id.* at 15-16. In an August 4, 2015 initial decision, the administrative judge found that the parties understood and freely accepted the terms of the settlement agreement and that the agreement was lawful on its face. IAF, Tab 27, Initial Decision (ID) at 1-2. Pursuant to the terms of the agreement, the administrative judge entered it into the record for purposes of enforcement by the Board.[3] *Id.*

¶3 The appellant has filed a timely petition for review of the initial decision asking the Board to set aside the settlement agreement on the grounds that it is

---

[2] On July 7, 2015, after the execution of the settlement agreement, the parties agreed that the appellant could have until July 31, 2015, to submit his application for retirement, and that the agency would not file a petition for enforcement or take any action to separate him until after July 31, 2015. Petition for Review (PFR) File, Tab 4 at 13-14.

[3] Under the OWBPA, a settlement agreement in an appeal where age discrimination has been alleged must meet the requirements of 29 U.S.C. § 626(f)(1)(A)-(E), and the appellant must be given a reasonable period of time within which to consider the agreement. 29 U.S.C. § 626(f)(1), (2); *Hinton v. Department of Veterans Affairs*, 119 M.S.P.R. 129, ¶ 7 (2013). Before accepting a settlement agreement in such an appeal, the Board must first verify that the agency has complied with the provisions of the OWBPA. *Hinton*, 119 M.S.P.R. 129, ¶ 7. In this case, the administrative judge did not make any findings regarding whether the settlement agreement complied with the provisions of the OWBPA before dismissing the appeal as settled. ID. On the basis of our review of the settlement agreement, however, we find that it complies with the OWBPA because it advised the appellant of his rights under the OWBPA and allowed him a reasonable period of time to consider the agreement. IAF, Tab 25 at 14-15. Accordingly, we modify the initial decision to find that the settlement agreement complied with the OWBPA.

invalid.  Petition for Review (PFR) File, Tab 1.[4]  The appellant also states that, subsequent to the settlement agreement, he received bills from the agency for his health insurance premiums for pay periods during which he had been removed or on leave without pay.  PFR File, Tab 1 at 7-8.  The agency has responded in opposition to the petition for review, and the appellant has submitted a reply to the agency's opposition.  PFR File, Tabs 4-5.

### DISCUSSION OF ARGUMENTS ON REVIEW

¶4        On review, the appellant argues that the settlement agreement should be set aside because, among other things, it was a "bad deal," he signed the agreement under duress without understanding its implications and consequences, and he received ineffective assistance of counsel.  PFR File, Tab 1 at 5-8, Tab 5.  Specifically, he contends that his attorney pressured him to accept the settlement agreement by demanding additional attorney fees to go to the hearing and incorrectly informing him that, if he did not accept the settlement agreement, he could lose his retirement benefits in a decision on the merits.  PFR File, Tab 1 at 6-7.  He states that the agency representative "continued an untrue representation of fact" by failing to disclose to him that his retirement pension could not be taken away because it was vested.  *Id.* at 6.  The appellant further alleges that the July 10, 2015 deadline in the settlement agreement for submitting his application for immediate retirement deprived him of a reasonable time to consider the agreement, exerted coercive pressure on him, and caused him duress.  PFR File, Tab 1 at 7, Tab 5 at 5-6.

---

[4] The appellant's petition for review, which he submitted via the Board's e-Appeal Online system, is stamped 1:54 a.m. on September 9, 2015.  PFR File, Tab 1.  Although the petition for review was due by September 8, 2015, ID at 3, the appellant's submission was timely because he submitted it from California, *see* 5 C.F.R. § 1201.14(m)(1) (all pleadings filed via the e-Appeal system are stamped with Eastern Time, but the timeliness of a pleading is assessed on the basis of the time zone from which it is filed).

¶5      A party may challenge the validity of a settlement agreement if he believes that it is unlawful, involuntary, or the result of fraud or mutual mistake. *Hinton v. Department of Veterans Affairs*, 119 M.S.P.R. 129, ¶ 4 (2013). To establish that a settlement was fraudulent as a result of coercion or duress, a party must prove that he involuntarily accepted the other party's terms, that circumstances permitted no other alternative, and that such circumstances were the result of the other party's coercive acts. *Id.* The party challenging the validity of the settlement agreement bears a "heavy burden." *Id.* An appellant's post-settlement remorse or change of heart cannot serve as a basis for setting aside a valid settlement agreement. *Id.*; *Henson v. Department of the Treasury*, 86 M.S.P.R. 221, ¶ 10 (2000).

¶6      Here, the fact that the appellant now believes that the settlement agreement is a "bad deal" for him does not render the agreement invalid. The record reflects that the appellant was represented during the settlement negotiations and that he and his attorney signed the agreement. IAF, Tab 25. He has not submitted any evidence showing that he was unable to understand the nature of the settlement agreement or that his decision was not an informed one. *See Wade v. Department of Veterans Affairs*, 61 M.S.P.R. 580, 584 (1994). As such, the appellant's dissatisfaction with the terms he agreed to is insufficient to warrant setting aside the settlement agreement. *See Hinton*, 119 M.S.P.R. 129, ¶ 4; *Henson*, 86 M.S.P.R. 221, ¶ 10. Likewise, although the appellant now claims that the settlement agreement's July 10, 2015 deadline for submitting his disability retirement application was coercive and caused him duress, he has not shown that he involuntarily accepted this term, that circumstances permitted no other alternative, and that such circumstances were the result of the agency's coercive act. *See Hinton*, 119 M.S.P.R. 129, ¶ 4. Moreover, the appellant received an extension of the deadline within the 7-day revocation period under the OWBPA, at which time he could have revoked the settlement agreement without the pressure of any imminent deadline but failed to do so. *See* 29 U.S.C.

§ 626(f)(1)(G); PFR File, Tab 4 at 13-14. Thus, we find his contention that the July 10, 2015 deadline was coercive or caused him undue duress to be unpersuasive.

¶7     Although the appellant contends that he signed the agreement on the basis of a "faulty, mistaken belief" regarding his retirement benefits, unilateral mistakes are not a basis for finding a settlement agreement invalid. *Pawlowski v. Department of Veterans Affairs*, 96 M.S.P.R. 353, ¶ 15 (2004). Furthermore, the appellant's allegation that the agency representative contributed to his misunderstanding likewise fails to provide a basis for finding the agreement invalid. To establish that a settlement agreement resulted from fraud based on misinformation from the agency, the appellant must show that the agency knowingly concealed a material fact or intentionally misled him. *See Harris v. Department of Veterans Affairs*, 142 F.3d 1463, 1468 (Fed. Cir. 1998). Here, the appellant's unsupported allegation that the agency representative may have failed to correct the appellant's apparent misunderstanding—assuming that the agency representative even knew of the appellant's misunderstanding—is insufficient to meet the appellant's "heavy burden of showing fraud." *Id.*

¶8     The appellant also is dissatisfied with the way his legal representative handled the settlement. However, an appellant is responsible for the acts of his chosen representative. *See Sofio v. Internal Revenue Service*, 7 M.S.P.R. 667, 670 (1981). Even if the appellant's attorney coerced him into signing the agreement or gave him misinformation, coercive acts by a party's own representative do not provide a basis for setting aside an otherwise proper settlement agreement. *See Adkins v. U.S. Postal Service*, 86 M.S.P.R. 671, ¶ 7 (2000).

¶9     We further find no merit to the appellant's argument that the agency mischaracterized his EEO complaint as a mixed case complaint and that his EEO complaint should not have been included as part of his Board appeal. PFR File, Tab 1 at 6, Tab 5 at 4. It is unclear why the appellant believes his EEO complaint

or Board appeal was "mischaracterized"; nonetheless, even if true, such argument has no bearing on the validity of the settlement agreement. The appellant has not explained, and we fail to see, how the alleged mischaracterization and administrative processing of his claims suggest that the settlement agreement is unlawful, involuntary, or the result of fraud or mutual mistake. Moreover, the settlement agreement unambiguously provides that the appellant agreed to release the agency from all causes of action based on occurrences prior to the execution of the agreement and specifically identifies the appellant's EEO complaint as one of the matters that would be released and discharged under the terms of the agreement. IAF, Tab 25 at 6-7. Thus, regardless of whether the appellant's removal and discrimination claims should have been adjudicated together, the appellant unambiguously settled both matters when he entered into the settlement agreement.

¶10    Lastly, the appellant argues that he has received bills from the agency for health insurance premiums for pay periods prior to the settlement agreement despite the fact that the agreement contains a mutual release of all debts arising before the date of the agreement. PFR File, Tab 1 at 7-8. Generally, allegations of noncompliance with a settlement agreement are considered, in the first instance, by the regional office that accepted the agreement into the record for enforcement. *Henson*, 86 M.S.P.R. 221, ¶ 15. Accordingly, if the appellant believes that the agency has failed to comply with the terms of the settlement agreement, then he may file a petition for enforcement with the regional office. We do not forward this matter for docketing as an enforcement matter now, however, because the appellant must first contact the agency pursuant to the 12th part of the settlement agreement. *See* IAF, Tab 25 at 13.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

---

[5] The administrative judge failed to inform the appellant of his mixed-case right to appeal from the initial decision on his discrimination claims to the Equal Employment Opportunity Commission and/or the U.S. District Court.  This was error, but it does not constitute reversible error, because we notify the appellant of his mixed-case appeal rights in this final order. *See Grimes v. U.S. Postal Service*, 39 M.S.P.R. 183, 186-87 (1988).

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                           _____
                                         William D. Spencer
                                         Clerk of the Board

Washington, D.C.