# United States Court of Appeals for the Federal Circuit

---

**JOSÉ M. SÁNCHEZ,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2018-2171

---

Petition for review of the Merit Systems Protection Board in No. NY-1221-01-0225-C-2.

---

Decided: February 10, 2020

---

MARGARITA LUISA MERCADO, Mercado-Echegeray, Despacho Legal, San Juan, PR, argued for petitioner.

BARBARA E. THOMAS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM.

---

Before DYK, PLAGER, and STOLL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* PLAGER.

DYK, *Circuit Judge.*

Dr. José M. Sánchez filed a petition with the Merit Systems Protection Board ("Board") to enforce a 2001 settlement agreement ("Agreement") that he entered into with the Department of Veterans Affairs ("VA"). The administrative judge ("AJ") denied the petition, and Dr. Sánchez sought review in this court. We affirm.

## BACKGROUND

Dr. Sánchez is a urologist at the VA Caribbean Healthcare System in Puerto Rico. In 1999, when Dr. Sánchez was working at the San Juan VA Medical Center ("San Juan hospital"), he reported to his supervisor and other superiors what he believed to be improper practices. His allegations included fraudulent acts by physicians and technicians who signed in for work while being absent, an excessive number of patient complaints, and wasted and abused resources.

On August 21, 2000, Dr. Sánchez received a proficiency report prepared by his supervisor. Dr. Sánchez did not at the time have a good relationship with residents and some other doctors at the San Juan hospital. The report stated that Dr. Sánchez's performance "ha[d] shown a significant [negative] change since his last evaluation" and that his "harsh criticism and righteous indignation and intolerance" had "given rise to several harsh exchanges." J.A. 23. It also noted that Dr. Sánchez complained that "he [was] 'targeted' by the rest of the urologists" and that "the residents may [have] purposely engage[d] in actions in order to discredit him." J.A. 23–24. On November 14, 2000, Dr. Sánchez received a memorandum reassigning him to the Ambulatory Care Service Line, where he believed that he would not perform surgery, care for patients, or supervise other staff members. He concluded that these actions

(i.e., the adverse proficiency report and reassignment) were taken by the VA in retaliation for his whistleblowing activities.

In 2001, Dr. Sánchez filed an individual right of action appeal with the Board, alleging that the VA took personnel actions against him based on the whistleblowing activities. That appeal was dismissed after Dr. Sánchez and the VA entered into a settlement agreement. The Agreement provided:

> 1. The [VA] and [Dr. Sánchez] mutually agree that [Dr. Sánchez] will be reassigned to the Ponce Outpatient Clinic (hereinafter ["Ponce clinic"]) effective not later than October 21, 2001. [Dr. Sánchez's] pay will not be reduced.

> 2. [Dr. Sánchez] will have a compressed work schedule at the [Ponce clinic] of ten hours per day for four days per week, which will include three hours of travel per day.

J.A. 48. Since the settlement in 2001, Dr. Sánchez has worked at the Ponce clinic.

The parties adhered to the Agreement for 16 years. However, on July 28, 2017, Dr. Sánchez received a letter from Gabriel Miranda-Ramirez, the Chief of Urology Service. The letter informed him of a change in his duty effective August 20, 2017, and that he was physically required to be at the Ponce clinic from "7:30 a.m. until 4:00 p.m. from Monday through Friday" to provide services. J.A. 66.

On August 16, 2017, Dr. Sánchez filed a petition for enforcement with the Board, arguing that the change in his work schedule was a breach of the Agreement. The AJ denied Dr. Sánchez's petition, reasoning that 16 years was "a reasonable period of time for [Dr. Sánchez] to work a compressed work schedule" at the Ponce clinic and that the Agreement did not bar the VA from requiring a different schedule. J.A. 265–66.

Dr. Sánchez did not seek review from the full Board, but instead filed a petition for review in our court. The AJ's decision became a final decision of the Board. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of Board decisions is limited to whether the decision was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## I. Interpretation of the Agreement

Dr. Sánchez argues that the Agreement includes no time limit and allowed him to maintain a compressed work schedule as long as he worked at the Ponce clinic.

When, as here, a contract is silent on the time limit of its term, it is established that the term is ordinarily effective for "a reasonable time." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441 (2015) ("[C]ontracts that are silent as to their duration will ordinarily be treated not as 'operative in perpetuity' but as 'operative for a reasonable time.'" (quoting 3 A. Corbin, Corbin on Contracts § 553 (1960))); *see also Restatement (Second of Contracts)* § 204 (stating that "a term which is reasonable in the circumstances is supplied" when it is omitted from the contract); 11 *Williston on Contracts* § 31:7 (4th ed.) ("[W]hen the contract involved is silent regarding the matter in question, only reasonable terms will be implied."); *Franklin Pavkov Const. Co. v. Roche*, 279 F.3d 989, 997 (Fed. Cir. 2002) ("The contract did not specify a time for delivery, thus the [g]overnment [was] obligated to deliver the [government furnished property] in sufficient time for it to be installed in the ordinary and economical course of performance." (internal quotation marks and citation omitted)).

What constitutes a reasonable time is determined based on the circumstances. *Restatement (Second of Contracts)* § 204 ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.").

In *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854 (Fed. Cir. 1992), the government settled an employee's grievances by agreeing to "transfer [the employee] and . . . 'slot' [her] to the United States Attorney's Office, in Cleveland, Ohio." *Id.* at 856. Four years after her transfer, the government reassigned her to an office in Akron, Ohio. *Id.* In the context of determining whether the employee's breach of contract claim was frivolous, we concluded that "the four years that [the employee had] been in Cleveland would satisfy [a] requirement" under the parties' settlement agreement *Id.* at 862. In other words, the four year period was a reasonable time.

Other circuits have examined the surrounding circumstances of the contract, in particular, "the background against which it was executed," to determine a reasonable time. *Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co.*, 209 F.2d 917, 918 (10th Cir. 1954). For example, in *Eagle-Picher*, the contract was silent as to the duration of a joint venture contract. *Id.* at 918–20. The court held that the continued duration should be determined based on "the facts and circumstances existing at the time the contract was entered into," *id.* at 921, and "[i]f no date is fixed by the contract for its termination, the agreement remains in force until its purpose is accomplished or until such accomplishment has become impracticable," *id.* at 919. The agreement there was for development of mining property under leases. *Id.* at 918. The court concluded that the joint venture contract continued during the renewed period after the original leases expired, because those leases were

commercially profitable, which was the reason why the joint venture was formed. *Id.* at 919, 921.

Similarly, *Barco Urban Renewal Corp. v. Housing Auth.*, 674 F.2d 1001 (3rd Cir. 1982) involved a contract between a housing authority and an urban developer for development of properties owned by the authority. *Id.* at 1002–03. No provision stated the duration of the agreement. *Id.* at 1004. The contract contemplated that the parties would agree to a development plan requiring the authority to convey all properties to the developer within five years. *Id.* If negotiations for the plan failed, however, the developer had a right to first refusal if the authority offered the properties to others. *Id.* Based on the purpose and background of the contract's formation, the court concluded that a reasonable time for the right to first refusal was five years—the deadline to convey all properties for development—because its purpose was expeditious development. *Id.* at 1007, 1009–10.

The background of the Agreement here supports the conclusion that 16 years was a reasonable duration.

First, the circumstances in which the Agreement was executed do not suggest that an unlimited duration was necessary to satisfy the contractual purpose. Here, at the time of the agreement's execution, Dr. Sánchez claimed that he faced animosity and retaliation at the San Juan hospital for his whistleblowing activities. The purpose of relocating Dr. Sánchez's workplace to the Ponce clinic was to mitigate the hostile environment by allowing Dr. Sánchez to leave that environment and work at another location, i.e., the Ponce clinic. Because Dr. Sánchez lived in San Juan, the parties also agreed to a compressed work schedule to accommodate his commute to Ponce. Dr. Sánchez admitted during oral argument that the purpose of the Agreement was to have him "transferred to Ponce" because "he suffered reprisals" due to his whistleblowing activities and that the "compressed work schedule

was agreed upon" because he continued to live in San Juan. Oral Arg. 4:45–7:00, available at http://oralarguments. cafc.uscourts.gov/default.aspx?fl=2018-2171.mp3. Under those circumstances, this unusual arrangement specified in the Agreement was for the period that Dr. Sánchez reasonably would have confronted the alleged hostile environment at the San Juan hospital. *See Eagle-Picher*, 209 F.2d at 919–21 (considering circumstances surrounding formation of the contract).

Second, the compressed work schedule was a very unusual term in that Dr. Sánchez would be paid for time that he was not working during his three hour commute. A federal employee is generally not eligible to be compensated for his commuting time. *See* 5 C.F.R. § 551.422 ("An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal "home to work" travel; <u>such travel is not hours of work</u>." (emphasis added)). It would thus seem unlikely that the parties intended that this unusual arrangement exist indefinitely.

On its face, a 16-year period is a reasonable time for the alleged hostilities against Dr. Sánchez to dissipate.[1] As the party claiming a breach, Dr. Sánchez had the burden of proof but did not offer evidence that the claimed animosity persisted after that 16-year time period. *Tech. Assistance Int'l, Inc. v. United States*, 150 F.3d 1369, 1373 (Fed. Cir. 1998) ("The party alleging a breach of contract bears the burden of proving the breach."). Given Dr. Sánchez's failure, the Board correctly determined that 16 years was a reasonable time and Dr. Sánchez did not

---

[1] In fact, as recently as 2017, Dr. Sánchez performed duties at the San Juan hospital due to facility issues at the Ponce clinic, and he did not claim that he continued to face a hostile environment.

satisfy his ultimate burden to prove a breach of the Agreement.

## II. Closing of Record and Denial of Hearing

Dr. Sánchez, however, contends that he could not satisfy his burden of proof because the record was closed without proper notice, and that he was deprived of a hearing. Based on additional evidence, he argues that "he would have[] showed that the [VA's] claimed needs for efficiency [were] not supported." Reply Br. 11. The issue here is not a due process issue; rather it is a simple discovery dispute. And we need not decide whether the record was improperly closed and whether Dr. Sánchez was entitled to a hearing because the evidence Dr. Sánchez sought pertained to disputed facts that were irrelevant.

Even if the record closure had been erroneous, the additional evidence that he sought in discovery concerns an irrelevant issue regarding the Ponce clinic's service needs as opposed to the Agreement's purpose to mitigate the alleged hostile environment at the San Juan hospital. Nothing in the background of the Agreement suggests that a reasonable time depended on the VA's need for additional services at the Ponce clinic. Thus, evidence of the need for Dr. Sánchez's service was irrelevant to the reasonable time issue, and the Board should not have considered it. *See Briscoe v. Dep't of Veterans Affairs*, 55 F.3d 1571, 1574 (Fed. Cir. 1995).

In cases involving a petition for enforcement, "[t]he judge may convene a hearing if one is necessary to resolve matters at issue." 5 C.F.R. § 1201.183(a)(3). There is "no right to a hearing regarding a petition for enforcement." *Weed v. Soc. Sec. Admin.*, 367 F. App'x 144, 147 (Fed. Cir. 2010). Since the efficiency evidence was irrelevant, a hearing was not required. We do not hold that such evidence is always irrelevant; we merely hold that, under the facts of this case, evidence undermining the VA's claimed needs for

efficiency is irrelevant to whether 16 years was a reasonable time period.

## CONCLUSION

We conclude that the VA did not breach the Agreement when it changed Dr. Sánchez's work schedule, and that Dr. Sánchez's challenge to the Board's discovery procedure lacks merit.

## **AFFIRMED**

### COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**JOSÉ M. SÁNCHEZ,**

*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**

*Respondent*

---

2018-2171

---

Petition for review of the Merit Systems Protection Board in No. NY-1221-01-0225-C-2.

---

PLAGER, *Circuit Judge*, dissenting.

The Government breached its contract with Dr. José M. Sánchez ("Dr. Sánchez"). It should be held accountable. Because the majority concludes otherwise, in a decision that is not supported by settled law or common sense, I respectfully dissent.

## BACKGROUND

The outcome of this appeal depends on the proper interpretation of the Settlement Agreement between Dr. Sánchez and the Department of Veterans Affairs ("VA" or "Government"). That interpretation depends not only on the words of the Agreement, but on the factual context in which it was negotiated and confirmed. As the majority opinion only partially details these facts, a more complete description is warranted.

The facts are these:

In 1999, Dr. Sánchez was employed by the VA in San Juan, Puerto Rico.  Dr. Sánchez is a medical doctor with a urological specialty and nearly 30 years of service.  At the time, he was assigned to and serving in the San Juan Medical Center.

During the course of his employment he observed what he believed to be a variety of improper practices, including fraudulent acts by other physicians regarding, *inter alia,* their working hours, as well as by technicians serving the facility's patients.  These various improper acts resulted in an especially large number of patient complaints, and what to him appeared to be wasted and abused government resources.

Dr. Sánchez reported his observations and concerns to various VA authorities. As a result, and not surprisingly, Dr. Sánchez's relationship with his supervisors, as well as some of the other physicians and residents whose conduct he reported, deteriorated; as our cases reveal, this is a not unusual consequence of being a whistleblower.

In due course, Dr. Sánchez was issued a proficiency report by his immediate supervisor indicating that his performance had significantly declined since the last report. This was followed, in November 2000, by a reassignment of Dr. Sánchez to the Ambulatory Care Service, which he understood to remove him from surgical work, care for patients, and supervision of other staff members.

In a series of interactions between Dr. Sánchez and the hospital authorities at the VA, Dr. Sánchez alleged that these hostile actions taken against him were in retaliation for his whistleblowing activities.  The agency did not respond favorably, so in 2001 Dr. Sánchez, pursuant to federal law, filed an individual right of action appeal with the United States Merit Systems Protection Board ("MSPB" or "Board").  In his appeal to the Board, Dr. Sánchez alleged

that the VA took adverse personnel actions against him based on his whistleblowing activities, a subject matter within the jurisdiction of the Board.

A series of negotiations then ensued between representatives of the VA and Dr. Sánchez. In the end, the parties reached a Settlement Agreement, and pursuant thereto Dr. Sánchez withdrew his appeal to the Board. In the Settlement Agreement the VA and Dr. Sánchez agreed to his reassignment to a VA medical facility in Ponce, Puerto Rico. Ponce is located a good distance from San Juan where Dr. Sánchez worked and lived.

To accept this reassignment meant that Dr. Sánchez would either have to drive an hour and a half each way every working day, a total of three hours in the car, or up-root his home and family from their residence in San Juan and relocate closer to Ponce.

The solution to this dilemma, to which the VA and Dr. Sánchez agreed, was that he would drive the three hours a day on working days, but that the VA would take that into account as part of his duties and he would be assigned four working days a week instead of five. This was intended as a way to compensate him for the time spent on the road instead of practicing medicine.

This was a mutually acceptable arrangement for both the VA and for Dr. Sánchez. The VA got him out from underfoot and away from the area so he could no longer trouble the hospital administration about their management problems. And Dr. Sánchez was given a place to work where he could practice the medical skills he was trained in, and he could put behind him the unfriendliness that his whistleblowing activity brought upon him. The settlement presumably was thought by the parties under the circumstances to be a win-win.

As stated in the Settlement Agreement:

1. The Agency and the Appellant mutually agree that the Appellant will be reassigned to the Ponce Outpatient Clinic (hereinafter "POPC") effective not later than October 21, 2001. The Appellant's pay will not be reduced.

2. The Appellant will have a compressed work schedule at the POPC of ten hours per day for four days per week, which will include three hours of travel per day.

J.A. 48, 50.

This arrangement was honored by both parties for sixteen years. Then, without warning, in July 2017, the Chief of Urology Service at the VA's San Juan hospital sent Dr. Sánchez a letter informing him that, effective August 20, 2017, he was to have a new "tour of duty." He would now be required to work a regular five-day week at the Ponce facility, from "Monday through Friday 7:30 a.m. to 4:00 p.m. with Sat.-Sun. off." J.A. 67. The only explanation offered was that this change was made "[i]n an effort that all VA resources are appropriately maximized and our Veterans are afforded availability of services." *Id.*

Efforts by Dr. Sánchez to discuss this sudden change, and to remind the VA of its longstanding Settlement Agreement, did not resolve the situation. On August 16, 2017, he again sought help from the Merit Systems Protection Board. This time he requested an order for enforcement of the 2001 Settlement Agreement, again a subject-matter within the jurisdiction of the MSPB.

The case was submitted to an MSPB administrative judge who ordered the VA to file "proof that it has complied with the settlement, or that it has good cause for noncompliance or for incomplete or partial compliance." J.A. 71. After an interruption from a hurricane hitting the island and a related dismissal and refiling of the case, an extended and contentious evidence discovery period ensued.

Finally, on May 16, 2018, the administrative judge issued her opinion. She concluded that, because the original Settlement Agreement provided no duration for the VA's obligations, "a reasonable time under the circumstances [would] be presumed." J.A. 264. Determining the duration of that "reasonable time" required "look[ing] beyond simply the length of time of compliance and mak[ing] an assessment of the overall attendant circumstances, including the motives of the agency." *Id.* The question before her, as she saw it, was whether sixteen years was "a reasonable period of time for the appellant to work a compressed work schedule of ten hours per day/four days per week (including three hours of travel per day) at the Ponce Out Patient Clinic." *Id.* Her answer was: yes, it was a reasonable time, and thus the VA had not breached the Agreement; the petition for enforcement was denied.

As the law allows, Dr. Sánchez appealed her decision to this court.

## DISCUSSION

There are two things wrong with the decision of the Merit Systems Protection Board in this case, in addition to the fact that the administrative judge seemed to be more concerned with the Government's well-being than with the protection of the Government employee when confronted by an arbitrary Government action.

The VA's action in this case is clearly arbitrary and capricious for two separate but related reasons. First, the presumption that the test for whether the Government could unilaterally terminate its Settlement Agreement in this case—what the Government might deem a "reasonable time" for the Agreement to expire—is a mistaken presumption on these facts.

It is true that the Agreement did not specify a termination date. And it is also true that in a case in which a termination date for an agreement is needed but omitted, a

court may employ a presumed "reasonable time" in the absence of something better. But in this case, no "presumed" termination date is needed, nor was one intended by the parties.

This is because, on its face, the Agreement was intended by the parties to continue in effect so long as Dr. Sánchez was assigned to the Ponce medical facility for work. The compressed work schedule was designed to make that assignment workable for both parties—the Government got Dr. Sánchez out of town; Dr. Sánchez found a compatible place to practice medicine, though at some cost to his being at home, his living arrangements, and the wear and tear on his vehicle.

The compressed schedule was designed and agreed to for the purpose of persuading him to accept the assignment to a distant facility, at which the Government intended he henceforth would work for whatever time both he and the VA mutually agreed. Nothing in the circumstances of this Agreement suggests that the parties intended this Settlement Agreement to be terminable at the will of the Government, without any consultation or willingness on the part of Dr. Sánchez to give up the benefits which he had been promised while he served the VA at this remote station.

Thus, so long as Dr. Sánchez was assigned to and continued to serve at the Ponce medical facility, both the Board and the majority err in reading into the Settlement Agreement a presumed need for an arbitrary termination date, one that has no justification under the circumstances for which this Agreement was intended.

The second thing wrong with the decision of the MSPB, as well as the majority, is that, even if the agreement is thought to be subject to termination at some "reasonable time" to be determined, the unilateral termination by the Government does not qualify as reasonable under the circumstances.

As this court has carefully explained regarding settlement agreements:

> A settlement agreement is a contract, and we apply basic contract principles unless precluded by law. The interpretation of a settlement agreement is an issue of law, which we review without deference to the Board's decision. In interpreting an agreement, we first ascertain whether the agreement clearly states the understanding between the parties. If there is an ambiguity in the formation of the agreement or during its performance, we implement the intent of the parties at the time the agreement was struck. We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning.

*Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998) (citations omitted). "The paramount focus is the intention of the parties at the time of contracting; that intention controls in any subsequent dispute." *King v. Dep't of the Navy*, 130 F.3d 1031, 1033 (Fed. Cir. 1997). We cannot change a contract's terms absent mistake, fraud, accident, or illegality. *Atlas Corp. v. United States*, 895 F.2d 745, 750 (Fed. Cir. 1990).

In addition to these basic principles, this court has noted that "an implied term of every settlement agreement is that the parties deal in good faith with each other." *Sweeney v. United States Postal Serv.*, 159 F.3d 1342, 1344 (Fed. Cir. 1998). And in *LaBatte v. United States*, 899 F.3d 1373, 1379 (Fed. Cir. 2018), the court said:

> The Restatement (Second) of Contracts § 205, Comment d (1981), explains that the duty of good faith and fair dealing prohibits "interference with or failure to cooperate in the other party's performance." This is true, even if "the actor believes his conduct to be justified." *Id*. The covenant "'imposes on a

party . . . the duty . . . to do everything that the contract presupposes should be done by a party to accomplish the contract's purpose.'" *Stockton E. Water Dist. v. United States,* 583 F.3d 1344, 1365 (Fed. Cir. 2009) (quoting 30 Richard A. Lord, Williston on Contracts § 77.10 (4th ed. 1999)).   The covenant prevents parties from "act[ing] so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States,* 395 F.3d 1283, 1304 (Fed. Cir. 2005).

The contract's plain language is clear and unambiguous and, given the circumstances, leaves nothing to be added.  *See Harris,* 142 F.3d at 1467.  According to the contract, Dr. Sánchez agreed to drop his claims against the Government in exchange for, *inter alia,* a compressed work schedule in Ponce.  The contract as such does not need to specify a duration of time for the compressed schedule to continue because it requires that, *if* Dr. Sánchez is working in Ponce, *then* the compressed schedule remains in effect.

The parties recognized that as long as Dr. Sánchez was working in Ponce, he was guaranteed a certain schedule in light of the inconvenience in traveling there.  Neither the Government nor this court can rewrite the contract or vitiate the parties' bargained-for exchange—that Dr. Sánchez would work far from home, but if and only if he were compensated for travel time.  "Without the compressed work schedule, I would have never agreed to be reassigned to the POPC to travel three hours per day.  This was the basis of the bargain."  J.A. 97.  The Government breached the contract when it required that Dr. Sánchez work in Ponce without the compressed schedule.

It is possible to hypothesize circumstances under which the Government might be justified in trying to renegotiate the Settlement Agreement.  For example, what if the hostile environment at the San Juan facility had sufficiently

dissipated due to changes in personnel there, and Dr. Sánchez's medical services were needed back at the San Juan hospital? Presumably the VA could initiate a renegotiation, proposing to reverse the decision to exile Dr. Sánchez to Ponce and thus eliminating his need for the daily roundtrip travel. A successful renegotiation would presume that Dr. Sánchez agreed that the new circumstances in San Juan vitiated his need to be elsewhere to practice medicine.

Or perhaps Dr. Sánchez might have moved his home and family to the Ponce area so that he was no longer having to travel the three hours a day. (Nothing in the record suggests this in fact occurred.) That might be grounds for a claim by the Government that the special hours and travel arrangements were no longer binding on the Government.

The Government did not offer any defenses along these lines to explain its obvious breach of the agreement. Nothing of this type was in evidence in the record in this case—the Government's claimed basis for abrogating its commitment being that the hospital management wanted to be sure that "the VA resources are appropriately maximized." J.A. 67. That issue, how best to maximize resources, was decided regarding Dr. Sánchez in 2001 when the original Settlement Agreement was entered into by the authorized representatives of the Government. Nothing in the record in this case or in the arguments made by either the MSPB's administrative judge or the majority in this court establishes otherwise.

We must reject the Board's erroneous conclusion as a matter of law. To hold otherwise contravenes the contract's plain language, the parties' intent, and the covenant of good faith and fair dealing. *See LaBatte*, 899 F.3d at 1379 ("The covenant prevents parties from 'act[ing] so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'") (citation omitted).

The decision of the MSPB must be reversed, and the matter remanded to the agency with instructions to honor its Settlement Agreement with Dr. Sánchez. In addition, the agency should make such monetary compensation as is necessary to restore him to the situation that prevailed before the VA breached its agreement.

I dissent from the majority's failure to follow the law, which requires that the Government honor its contracts just as the Government always insists other contracting parties must. I dissent as well from the majority's failure to recognize the judicial obligation to uphold the inherent values of settlement contracts that benefit both the employee and the Government, as a method for avoiding unnecessary and prolonged litigation. The law values these contracts, and so should we.