NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**PETER R. CALI,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

_____

2024-1722

_____

Petition for review of the Merit Systems Protection Board in No. DC-1221-23-0197-W-1.

_____

Decided: December 5, 2024

_____

PETER R. CALI, Saint Augustine, FL, pro se.

CHRISTOPHER BERRIDGE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

_____

Before MOORE, *Chief Judge*, PROST and STOLL, *Circuit Judges*.

PER CURIAM.

Peter R. Cali has appealed the Merit Systems Protection Board's ("MSPB") decision denying Mr. Cali's request for corrective action of his removal. *Cali v. Dep't of the Navy,* No. DC-1221-23-0197-W-1 (M.S.P.B. Jan. 12, 2024) ("*Decision*"). For the following reasons, we affirm.

## BACKGROUND

Mr. Cali was appointed to a career conditional, competitive service position as a Supervisory Engineer, GS-13-01 in the Department of the Navy's ("agency") Public Works Department ("PWD") Sigonella, located on the U.S. Naval Air Station ("NAS") in Sigonella, Italy. PWD Sigonella is under the command of the agency's Naval Facilities Engineering Systems Command ("NAVFAC") Europe, Africa, Central's ("EURAFCENT") Facilities Management Division. Mr. Cali's appointment was subject to completion of a two-year probationary period beginning January 28, 2020.

On September 7, 2021, the Department of Defense ("DoD") issued a memorandum entitled: Force Health Protection Guidance (Supplement 23)—Department of Defense Guidance for Coronavirus Disease 2019 ("COVID-19") Vaccination Attestation and Screening Testing for Unvaccinated Personnel ("Supplement 23"). J.A. 755. The memorandum required DoD civilian employees to attest to their COVID-19 vaccination status and required unvaccinated civilian employees (or employees who declined to attest to their vaccination status) to participate in COVID-19 testing at least weekly. The memorandum denied access to DoD facilities for civilian employes and contractor personnel who refused to participate in the required screening testing. Additionally, the memorandum authorized DoD agencies to initiate adverse employment actions, up to and including removal, against unvaccinated civilian employees who refused COVID-19 testing and further authorized DoD agencies to bar such employees

from their worksites on agency installations or facilities to protect the health of all DoD personnel and their communities, and to preserve total force readiness. J.A. 761–62. The DoD issued subsequent revisions to Supplement 23 on October 18, October 29, and December 20, 2021—each required the same testing for unvaccinated personnel. *Decision*, at J.A. 4–5.

In November 2021, Mr. Cali submitted a "reasonable accommodation" request to his first-line supervisor seeking religious exemption from the COVID-19 vaccination mandate. *Decision*, at J.A. 5. Mr. Cali also discussed his concern regarding the then-available COVID-19 test kits, which had received an Emergency Use Authorization ("EUA") from the Food and Drug Administration ("FDA"), rather than the full FDA approval. Mr. Cali expressed particular concern that the agency's testing policy appeared to lack a required "informed consent" for employees that were ordered to test with EUA kits, which he believed was mandated by federal statute.[1]

On December 3, 2021, NAVFAC's Commander issued a memorandum entitled: Guidance for Coronavirus Disease 2019 Screening and Testing ("NAVFAC Memorandum"). J.A. 856. The NAVFAC Memorandum established a COVID-19 screening program for NAVFAC, including weekly COVID-19 testing for unvaccinated civilian employees regularly entering government facilities. If these employes refused testing, the NAVFAC Memorandum authorized DoD agencies to "bar DoD

---

[1] Mr. Cali invokes 21 U.S.C. § 360bbb-3, which empowers the Secretary of Health and Human Services to "authorize the introduction into interstate commerce, during the effective period of [an emergency] declaration . . . , of a drug, device, or biological product intended for use in an actual or potential emergency." 21 U.S.C. § 360bbb-3(a)(1).

civilian employees who refuse required screening tests from their worksites on the installation or facility to protect the safety of others, including while any progressive disciplinary actions are pending." J.A. 858.

On January 13, 2022, Mr. Cali corresponded with the U.S. Naval Hospital Sigonella's Commanding Officer to determine if the hospital had FDA approved COVID-19 test kits and to address informed consent regarding the use of EUA products. *Decision*, at J.A. 6–7. The Sigonella hospital's Commanding Officer confirmed that only EUA test kits were available at the hospital and that informed consent was not required before performing the test. In a January 26, 2022 email to his first-line supervisor, Mr. Cali stated that he would participate in the COVID-19 testing program if provided an FDA-approved test. Mr. Cali was notified by the NAVFAC EURAFCENT Business Director that Mr. Cali's insistence upon using only an FDA-approved test would be considered a refusal to submit to a COVID-19 test. Mr. Cali acknowledged that he understood. J.A. 2875.

On January 27, 2022, the agency issued Mr. Cali a Notice of Termination During Probationary Period for "failure to comply with COVID-19 testing, command policy, and host nation law, especially given [Mr. Cali's] supervisory role, [Mr. Cali's] conduct is considered unfit for continued Federal employment." J.A. 633. Mr. Cali appealed his probationary termination to the MSPB on February 24, 2022; that appeal was dismissed for lack of jurisdiction. After the dismissal, Mr. Cali filed a whistleblower complaint with the Office of Special Counsel ("OSC") alleging that the agency had retaliated for his engagement in protected whistleblowing activities when it terminated him and ordered his return to the United States. On November 3, 2022, OSC notified Mr. Cali that it closed its investigation without making any findings of whistleblower retaliation. Mr. Cali then filed an Individual Right of Action ("IRA") appeal before the MSPB.

Afterward, the MSPB Administrative Judge ("AJ") found that Mr. Cali had exhausted his administrative remedies and met his burden of establishing MSPB jurisdiction over his IRA appeal.

In its initial decision, the AJ denied Mr. Cali's request for corrective action, finding that the agency had met its clear and convincing burden of proof to support that it would have terminated Mr. Cali notwithstanding his protected disclosures, activities, or perceived whistleblower status. *Decision*, at 48. The initial decision became final on February 21, 2024.

Mr. Cali timely appealed, and this court has jurisdiction under 28 U.S.C. § 1295(a)(9).

### DISCUSSION

In review of MSPB final decisions, we are required to affirm the decision unless "any agency action, findings, or conclusions [are] found to be—(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The petitioner bears the burden of establishing error in the [MSPB]'s decision." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

Mr. Cali argues that (1) the agency did not meet its burden to prove it would have terminated Mr. Cali absent his whistleblowing activities; (2) the AJ made grave errors of omission in its consideration of the evidence; (3) Mr. Cali never made a decision whether or not he would submit to an EUA COVID-19 test; and (4) Mr. Cali should not have been terminated because the agency's order to require COVID-19 testing was unlawful. We disagree and address each of Mr. Cali's arguments in turn.

I

We start with Mr. Cali's arguments regarding the agency's purported failure to meet its burden to prove a termination absent whistleblowing activities. The Whistleblower Protection Act ("WPA") protects several types of communications, to include "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—(i) any violation of any law, rule, or regulation, or (ii) . . . a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). And an employee may seek corrective action with respect to a personnel action taken by the agency, such as termination, as the result of such disclosures. To show entitlement to corrective action, "the former employee must prove by a preponderance of the evidence that he or she made a protected disclosure under § 2302(b)(8) that was a contributing factor to the employee's termination." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). "If the employee establishes this prima facie case of reprisal for whistle-blowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." *Id.* (cleaned up).

The AJ determined that Mr. Cali's disclosures to his first-line supervisor and to the hospital's Commanding Officer were protected because Mr. Cali had a reasonable belief that, should the agency require him to take an EUA COVID-19 test kit (which it did), the agency must provide him with informed consent related to the administration of the test (which it did not). *Decision*, at J.A. 22–29. The AJ further determined that Mr. Cali's protected disclosures were a contributing factor in the agency's decision to terminate him because after Mr. Cali's first-line supervisor notified the Business Director and second-line supervisor that Mr. Cali believed he needed to be provided with informed consent prior to taking a non-FDA approved

COVID-19 test, Mr. Cali was terminated the following day. *Decision*, at J.A. 33–35.

Given the AJ's determination that Mr. Cali had established by a preponderance of the evidence that he had made a protected disclosure under § 2302(b)(8), and that this disclosure was a contributing factor to his termination, the burden of persuasion shifted to the agency to show by clear and convincing evidence that it would have terminated Mr. Cali in the absence of the disclosure. In making its finding that the agency would have terminated Mr. Cali regardless of his protected disclosures, the AJ considered the *Carr* factors:

> [1] [T]he strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Carr v. SSA*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

Mr. Cali argues that the AJ made "clearly erroneous" findings and that "the [a]gency's actions and inactions provide substantial evidence that their motive was not to address Mr. Cali's concerns" or to ensure Mr. Cali's participation in the testing program. Appellant's Br. 32, *see also id.* at 20–47.

In its weighing of the *Carr* factors, the AJ found that (1) the agency offered strong evidence in support of its termination action given Mr. Cali's written refusal to participate in the agency's required testing program; (2) the agency had little to no motive to retaliate against Mr. Cali based on his disclosure, because it was Mr. Cali's refusal to obey a command order that created a loss of trust which ultimately supported the agency's termination

decision; and (3) the lack of comparator evidence weighed neutrally. Mr. Cali disputes the AJ's factual findings and interpretation of the record. But we must affirm the AJ's factual findings unless they are "unsupported by substantial evidence." 5 U.S.C. § 7703(c). And, on this record, Mr. Cali has not shown that a reasonable factfinder could not have found that the agency would have terminated him in the absence of his protected disclosures. We thus reject this argument.

## II

We now turn to Mr. Cali's argument that "the AJ made grave errors of omission." Appellant's Br. at 6. Specifically, Mr. Cali contends that the AJ failed to reconcile "numerous inconsistencies" in the record, to include false and contradictory statements. Mr. Cali does not show, however, that substantial evidence does not support the AJ's findings on this record. *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Therefore, we find no error in the AJ's determination.

## III

Next, we address Mr. Cali's argument that he never made a decision regarding whether or not he would submit to an EUA COVID-19 test. Specifically, Mr. Cali alleges that "[n]o decision was made by Mr. Cali at that point (or any point thereafter) to accept of [sic] refuse administration of an EUA product." Appellant's Br. 23. And from his testimony, Mr. Cali contends that "I'm not refusing here . . . I asked for FDA approved tests"; "I'm not refusing to test, but—but I believe I have the right as an American to refuse." *Id.*

But, Mr. Cali also concedes that he understood that his insistence would be considered a refusal to test. Indeed,

the Business Director told Mr. Cali that "if you insist upon using FDA-approved tests, you understand that the Command will . . . . interpret that as a refusal—as a blanket refusal to test," to which Mr. Cali responded "in the affirmative again, that [he] understood." J.A. 2875. Mr. Cali was aware of the then-unavailable FDA-approved tests, and aware that his refusal to take the EUA COVID-19 test would be interpreted as a refusal to test. Mr. Cali does not offer any evidence or reasoning that demonstrates that the AJ's finding that Mr. Cali's insistence on taking only an FDA approved COVID-19 test was functionally a refusal to submit to COVID-19 testing lacked substantial-evidence support. We again do not see error in the AJ's findings, supported by Mr. Cali's own admission.

## IV

Finally, Mr. Cali argues that he should not have been terminated because the agency's order for unvaccinated employees to take COVID-19 tests was unlawful. In Mr. Cali's view, either FDA approved COVID-19 tests should have been provided, or alternatively, informed consent was required under 21 U.S.C. § 360bbb-3 prior to subjecting personnel to the EUA COVID-19 tests. Therefore, "Mr. Cali maintains [that] the [a]gency violated 5 U.S.C. § 2302(b)(9)(D) when they executed an adverse personnel action due to him allegedly refusing to obey an order that required him to violate a law, rule, or regulation." Appellant's Br. 59–60. We disagree.

When Supplement 23, its revisions, and the NAVFAC Memorandum issued, only EUA COVID-19 tests were available at NAS Sigonella. J.A. 200. As to Mr. Cali's statutory arguments, 21 U.S.C. § 360bbb-3 governs the conduct of the Secretary of Health and Human Services, not the Navy. *See* 21 U.S.C. § 321(d).

Additionally, as the AJ correctly determined, 5 U.S.C. § 2302(b)(9)(D) does not apply in Mr. Cali's situation. The right-to-disobey provisions of the WPA applies when an

employee "refus[es] to obey an order that would require the individual to violate a law, rule, or regulation."  5 U.S.C. § 2302(b)(9)(D).  Here, Mr. Cali would not have been in violation of any law, rule, or regulation had he undergone EUA COVID-19 testing without informed consent, and Mr. Cali has not demonstrated that the AJ's decision lacked substantial evidentiary support.

## CONCLUSION

We have considered Mr. Cali's remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm.

## **AFFIRMED**

### COSTS

No costs.