NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MORRIS ONYEWUCHI,**

*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**

*Respondent*

---

2025-1054

---

Petition for review of the Merit Systems Protection Board in No. DA-3330-21-0036-I-4.

---

Decided: December 5, 2025

---

MORRIS ONYEWUCHI, Laguna Vista, TX, pro se.

STEPHEN J. SMITH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by REGINALD THOMAS BLADES, JR., PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before MOORE, *Chief Judge*, TARANTO and HUGHES, *Circuit Judges*.

PER CURIAM.

Morris Onyewuchi, as a preference-eligible veteran, is entitled to certain rights in hiring by the federal government. *See* 5 U.S.C. §§ 2108, 3304, 3309–20. He had been working for more than a year as an immigration judge within the Department of Justice (agency) when, in 2020, he applied in response to each of two agency advertisements for vacancies, posted less than three months apart, for appellate-immigration-judge positions. He was interviewed for the first position, and that interview counted for the second position as well, but he was not hired for either position. He then unsuccessfully sought relief from the Department of Labor, asserting a violation of rights protected by the Veterans Employment Opportunities Act of 1998 (VEOA), Pub. L. No. 105-339, §§ 2–3, 112 Stat. 3182, 3182–84 (1998) (codified as amended in part at 5 U.S.C. §§ 3304, 3330a).

Mr. Onyewuchi appealed to the Merit Systems Protection Board, but the Board's administrative judge (AJ) denied corrective action. *Onyewuchi v. Department of Justice*, No. DA-3330-21-0036-I-4, 2023 WL 2357607 (M.S.P.B. Feb. 28, 2023) (*Initial Decision*); Appx. 5–19. The Board affirmed the denial, with one modification to the *Initial Decision*. *Onyewuchi v. Department of Justice*, No. DA-3330-21-0036-I-4, 2024 WL 3688876 (M.S.P.B. Aug. 6, 2024) (*Final Decision*); Appx. 1–4. Mr. Onyewuchi appeals to us. We affirm the Board's decision.

I

A

In January 2020 and April 2020, the agency announced two vacancies for the position of appellate immigration judge on the Board of Immigration Appeals (BIA), both of them excepted-service attorney positions for which the

public could apply. *See Initial Decision* at 6–7;[1] 5 U.S.C. § 2103(a) (distinguishing excepted service from competitive service and Senior Executive service); *Patterson v. Department of the Interior*, 424 F.3d 1151, 1155 n.4 (Fed. Cir. 2005). For such excepted-service positions, as relevant here, 5 C.F.R. § 302.101(c) requires that an agency must "follow the principle of veteran preference as far as administratively feasible." Since 1979, the agency also has had a policy, reflected in the agency's Office of Legal Counsel Memorandum Opinion 79-22, providing that preference-eligible attorney candidates may claim a preference that will be evaluated as a positive factor such that "[w]hen the veteran's other qualifications place him or her in close competition, the veteran is preferred over other applicants with substantially equal qualifications." Appx. 36–38. An internal agency posting (which is before us in its February 2022 version) makes materially the same point about final selection, noting that "[s]electing officials must [continue to] treat veterans' preference eligibility as a positive factor in attorney hiring at all stages of the review process." Appx. 41.

A second internal agency memorandum set out a process, approved by the Attorney General in March 2019, for the hiring of immigration judges and BIA appellate immigration judges in particular. Appx. 46–50, 55. As relevant here, applicants for the appellate position (within the agency's Executive Office for Immigration Review, or EOIR) would be sorted into "do not recommend" and "recommend" tiers (the latter having a "highly recommended" subcategory), with all current immigration judges having at least one year of experience automatically deemed "recommended," and all "recommended" candidates would be scheduled for an interview with an initial panel unless

---

[1]    In citing the *Initial Decision*, we use the original page numbers on the version that appears in the appendix.

already interviewed for another position in the preceding twelve months, in which case the prior interview would be used for the new opening. Appx. 47; *Initial Decision*, at 2, 4–5. The EOIR's director would select candidates to recommend and forward to a finalist panel, after which the director would make conditional offers, with hiring ultimately subject to the Attorney General's discretion. *Initial Decision*, at 4–5.

B

Mr. Onyewuchi qualifies for veteran preference-eligible status under 5 U.S.C. §§ 2108, 2108a because he was honorably discharged from the Army after serving for approximately five years. *Initial Decision*, at 2; Appx. 21. By January 2020, he had been employed by the agency as an immigration judge for more than one year, following other extensive government service. *Initial Decision*, at 5–6.

In January 2020, the agency advertised to hire one or more appellate immigration judges, and Mr. Onyewuchi applied that month and was interviewed in February 2020. Appx. 51, 57, 63. In March 2020, the three-person interview panel forwarded to the EOIR director seven candidates as "highly recommended" and sixteen candidates as "recommended," the latter group including Mr. Onyewuchi (entitled to that status because of his service as an immigration judge for more than one year). Appx. 57, 67. Later that March, the director forwarded to the finalist panel a list of twelve interviewees, one of whom was Mr. Onyewuchi. Appx. 57; *see* Appx. 47–48 (explaining the differences between the two panels). Mr. Onyewuchi then interviewed with the finalist panel, but in April 2020, the agency extended four offers to other applicants, each of whom the finalist panel had deemed "significantly stronger" than Mr. Onyewuchi. Appx. 57. Three of the offerees accepted. *Id.*

The agency advertised its next BIA vacancy in April 2020, and Mr. Onyewuchi applied, as did seven of the other finalists for the first BIA position, four of whom had been

rated higher than Mr. Onyewuchi. *Id.* Because Mr. Onyewuchi had interviewed for the first position and received a rating of "recommended," the EOIR director reviewed Mr. Onyewuchi's application for an interview with the finalist panel, as he did for the other seven previous finalists who had reapplied. Appx. 68; *see Initial Decision*, at 7. Mr. Onyewuchi's veteran's status was considered a positive factor in evaluating his application for this second position. *Initial Decision*, at 7.

In May 2020, the EOIR director determined that "[n]othing substantively had changed regarding the applications of [Mr. Onyewuchi] or the other [four] candidates that had been previously considered significantly stronger applicants." Appx. 57–58. The director also found two additional applications (provided to the director by the initial panel evaluating candidates for the second vacancy) to be stronger than Mr. Onyewuchi's application. Appx. 58. The director therefore forwarded to the finalist panel the just-noted six applications, and Mr. Onyewuchi was not interviewed for the second BIA position by either panel. *Initial Decision*, at 7–8; Appx. 57–58.

C

In August 2020, Mr. Onyewuchi filed a complaint with the Department of Labor under the VEOA, 5 U.S.C. § 3330a(a)(1), seeking to advance claims falling into each of the two categories recognized by VEOA. *Initial Decision*, at 2–3, 8. He alleged that the agency violated his veteran-preference rights purportedly afforded by agency regulation and hiring policies. *Id.* at 2, 9; *see* 5 U.S.C. § 3330a(a)(1)(A) (providing redress for violation of rights under "any statute or regulation relating to veterans' preference"). And he alleged that the agency denied him the opportunity to compete for the second position. *Initial Decision*, at 2–3, 13; *see* 5 U.S.C. § 3304(f)(1) (2004) (preference-eligibles like Mr. Onyewuchi may not be denied "the opportunity to compete for vacant positions for which the

agency making the announcement will accept applications from individuals outside its own workforce under merit promotion procedures").[2]  In October 2020, the Department of Labor concluded that the agency had not violated Mr. Onyewuchi's preference rights. *Initial Decision*, at 8.  Mr. Onyewuchi appealed to the Board.

In February 2023, the Board-assigned AJ issued the *Initial Decision*, denying Mr. Onyewuchi's request for corrective action. *Initial Decision*, at 2.  As to his first type of VEOA claim: The AJ determined that 5 C.F.R. § 302.101(c) did not confer enforceable rights on veterans because it is too non-specific and thus merely "hortatory," and the internal policies are not a "regulation" under section 3330a(a)(1)(A).  The AJ also concluded that, in any event, the agency did not violate the cited regulation and policies. *Initial Decision*, at 9–13 (citing *Andrews v. Principi*, 351 F.3d 1134, 1137 (Fed. Cir. 2003)).  As to his second type of VEOA claim: The AJ concluded that Mr. Onyewuchi was not denied an opportunity to compete under VEOA because relevant precedent indicates that section 3304(f)(1) cannot apply to an immigration judge applying for an excepted-service position and, in any event, the agency properly considered his qualifications in the competitions for the positions. *Initial Decision*, at 13–14.

In April 2023, Mr. Onyewuchi then filed a petition to the Board for review of the AJ's decision. *Final Decision*, at *1; *see* Appx. 103.  The Board modified the *Initial Decision* because the AJ failed to address Mr. Onyewuchi's claim that the agency violated 5 C.F.R. §§ 302.202–.03, but it found the Board's oversight harmless because there was

---

[2]    In December 2024, after Mr. Onyewuchi filed his petition for review to this Court, Congress reorganized 5 U.S.C. § 3304, moving subsection 3304(f)(1) to newly added subsection 3304(l)(1).  Chance to Compete Act of 2024, Pub. L. No. 118-188, § 2, 138 Stat. 2644, 2645 (2024).

no violation, as the procedure the agency used was appropriate under the relevant regulations. *Final Decision*, at *1; *see* 5 C.F.R. § 302.202 ("[E]ach agency shall establish qualification standards such as those relating to experience and training[.]"); *id.* § 302.203(b) ("Agencies may prescribe additional factors to protect the integrity and promote the efficiency of the service when job-related and consistent with business necessity."). The Board affirmed the *Initial Decision* as so modified. *Final Decision*, at *2.

Mr. Onyewuchi timely petitioned for review by this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence[.]" 5 U.S.C. § 7703(c). We review the Board's legal determinations de novo, *Chambers v. Department of the Interior*, 602 F.3d 1370, 1375 (Fed. Cir. 2010), and its factual findings for substantial-evidence support, *Knox v. Department of Justice*, 125 F.4th 1059, 1064 (Fed. Cir. 2025). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938), even if an opposite conclusion might also be supportable, *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20 (1966). Mr. Onyewuchi bears the burden of establishing errors in the Board's determinations. *Harris v. Department of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## A

Mr. Onyewuchi argues that we should reverse the Board's rejection of his VEOA claim under 5 U.S.C. § 3330a(a)(1)(A), which requires a violation of rights under

"any statute or regulation relating to veterans' preference." He points to 5 C.F.R. § 302.101(c) as an assertedly violated regulation and the agency's policy reflected in the 79-22 Memorandum as another assertedly violated regulation. *Onyewuchi Opening Br.* at 40–44. We find no reversible error in the Board's determination of no violation of section 3330(a)(1)(A).

We need not and do not reach either the question whether 5 C.F.R. § 302.101(c) is unenforceable in a claim under 5 U.S.C. § 3330a(a)(1)(A) or the question whether the 79-22 Memorandum fails to qualify as a "regulation." It is enough that we see no reversible error in the Board's holding there was no violation of the regulation or the Memorandum. We have held that an agency complies with 5 C.F.R. § 302.101(c) if it "consider[s] veteran status as a 'positive factor' in reviewing applications." *Patterson*, 424 F.3d at 1159–60. The 79-22 Memorandum does not add anything material for present purposes. *See* Appx. 36–38, 41. Critically, neither the regulation nor the Memorandum precludes the agency from hiring someone reasonably found to be a better candidate for the job than the preference-eligible veteran.

The Board had substantial evidence on which to determine that the agency here did consider Mr. Onyewuchi's veteran status as a positive factor and hired others because they were better candidates—satisfying the regulation and the 79-22 Memorandum. The Board could and did credit testimony that Mr. Onyewuchi's veteran-preference status was known and considered a positive factor in both hiring rounds. *Initial Decision*, at 6, 8, 10; *see* Appx. 24. And the Board found, based on substantial evidence, that, for both positions, the candidates selected were better qualified than Mr. Onyewuchi. *See Initial Decision*, at 10–13; Appx. 56–57, 67–69, 80.

### B

Mr. Onyewuchi argues that we should reverse the Board's rejection of his VEOA claim that the agency denied him his right to compete in violation of 5 U.S.C. § 3304(f)(1). *See* Onyewuchi Opening Br. at 52–68. In particular, he alleges that the agency was required to forward his application to the finalist panel for the second position because he had interviewed within the last twelve months for the first position. *Id.* at 59–62. We see no reversible error in the Board's rejection of his right-to-compete claim.

As an initial matter, in *Kerner v. Department of the Interior*, we ruled that the section 3304(f)(1) right applies only to initial appointments, not promotions. 778 F.3d 1336, 1338–39 (Fed. Cir. 2015). If that ruling applies to excepted-service as well as competitive-service positions, it bars the right-to-compete claim of Mr. Onyewuchi, who already was a non-probationary employee working for the agency as an immigration judge. In any event, his claim fails on the merits.

We have held that a veteran whose qualifications are evaluated for a position, at least where the competition comported with agency policy, cannot have been denied an opportunity to compete. *See Dean v. Consumer Product Safety Commission*, 548 F.3d 1370, 1373–74 (Fed. Cir. 2008); *see also Lazaro v. Department of Veterans Affairs*, 666 F.3d 1316, 1319 (Fed. Cir. 2012) ("[T]he VEOA does not enable veterans to be considered for positions for which they are not qualified."); *Abell v. Department of Navy*, 343 F.3d 1378, 1384–85 (Fed. Cir. 2003) (concluding that the agency did not deny an opportunity to compete when it "reasonably relied on its interview process to determine that [the applicant] did not meet the qualifications required for the position"); *Joseph v. Federal Trade Commission*, 505 F.3d 1380, 1385 (Fed. Cir. 2007) (same). Here, for both positions, Mr. Onyewuchi received a rating of "recommended," consistent with the agency's policy, given his

experience as an immigration judge for at least a year. *See* Appx. 47, 56–57, 67. Also consistent with agency policy, Mr. Onyewuchi's interview for the first position was considered when the director determined, for the second position, which candidates to forward to the finalist panel because that interview occurred within twelve months of his second application: Based on the merits of that interview and the lack of change in his application, the director decided not to forward Mr. Onyewuchi's application to the finalist panel. *See* Appx. 57–58. On this record, the Board committed no error in holding that he was not denied the right to compete. *Initial Decision*, at 14.

C

Mr. Onyewuchi claims on appeal that the agency violated his Fifth Amendment right to due process or a right to have the agency follow its own procedures under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Onyewuchi Opening Br. at 28–29. Specifically, he argues that the various alleged violations just discussed mean that he was deprived of a constitutionally protected "property interest" in his veteran's preference. *Id.* at 13, 29–31. As part of his due process claim, he also asserts that the EOIR director prejudged him, improperly exercised authority after delegating it to a designee, and exercised ultra vires unilateral authority. *Id.* at 12–15, 32–37; Onyewuchi Reply Br. 35–37.

Mr. Onyewuchi's due process and *Accardi* claims are forfeited, as he has pointed to no place in the record before the Board where he previously presented those claims. Regardless, the claims lack merit. For reasons largely already recounted, the agency gave Mr. Onyewuchi full notice and opportunity to press his application, and it followed its procedures—*e.g.*, determining that Mr. Onyewuchi was a "recommended" candidate for both positions, Appx. 56–57, 67–68, and recognizing his veteran-

preference status as a positive factor, *see Initial Decision*, at 6, 8, 10.

The agency also reasonably created internal policies consistent with 5 C.F.R. §§ 302.202–.203. *See Final Decision*, at \*1. And contrary to Mr. Onyewuchi's contentions about the EOIR director's delegation of authority, the agency's hiring guidelines permit "the EOIR Director (or other senior EOIR *official designated* by the Director) [to] interview [candidates]," but the guidelines do not say that such a delegation relinquishes the EOIR director's power. Appx. 48 (emphasis added). Indeed, under the guidelines, "[p]ursuant to a delegation from the Attorney General, the EOIR Director will [then] determine whether to select the candidate for an initial conditional offer." Appx. 49 (emphasis added); *see also In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1375 & n.3 (Fed. Cir. 2022) (recognizing authority of a delegator to override the delegatee's choice); *Apple Inc. v. Vidal*, 63 F.4th 1, 7 (Fed. Cir. 2023) (same). Further, Mr. Onyewuchi does not persuasively show that he was prejudged given evidence that the agency found other applicants to be more qualified and "significantly stronger" than Mr. Onyewuchi only after considering the merits of his and their applications. Appx. 57–59. Mr. Onyewuchi's due process arguments, even if he had a constitutionally protectable interest, are thus meritless.

### III

We have considered Mr. Onyewuchi's other arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's final decision.

The parties shall bear their own costs.

**AFFIRMED**